**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KALI KANONGATAA,                                     :     ECF Case
                                  Plaintiff,         :
                                                     :     Case No.  1:16-cv-07382 (LAK)
                    -against-                        :
                                                     :
AMERICAN BROADCASTING COMPANIES,                     :
INC. AND YAHOO! INC.,                                :
                                                     :
                                  Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW
### IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Nathan E. Siegel
Dana R. Green
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1899 L Street NW, Suite 200
Washington, DC 20036
Tel: (202) 508-1100
Fax: (202) 861-9888
nsiegel@lskslaw.com

*Counsel for Defendants American Broadcasting
Companies, Inc. and Yahoo! Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF FACTS AND ALLEGATIONS ...............................................................2

I.  THE PARTIES.......................................................................................................2

II.  PLAINTIFF'S ALLEGATIONS ...........................................................................3

ARGUMENT ......................................................................................................................5

I.  DEFENDANTS' FAIR USE ARGUMENTS ARE PROPERLY
    CONSIDERED AT THIS TIME ...........................................................................5

II.  ABC'S USE OF SHORT CLIPS FROM THE VIDEO IS A FAIR USE ...........7

    A.  The Purpose and Character of ABC's Use Favors a Finding of Fair
    Use .............................................................................................................7

        1.  ABC use the clips for comment and news reporting ...................8

        2.  ABC's use of clips from the Video was transformative ............9

        3.  ABC's status as a for-profit entity is not relevant...................12

    B.  The Nature of the Copyrighted Work Weighs in Favor of Fair Use ...................13

    C.  The Amount and Substantiality of the Portion Use Weighs in Favor of
    Fair Use....................................................................................................15

    D.  The Effect of the Use Upon the Potential Market Weighs in Favor of
    Fair Use....................................................................................................17

    E.  The Balance of the Factors, Taken Together With the Public Interest,
    Demonstrates that Fair Use Was Made.....................................................18

CONCLUSION.................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arica Institute, Inc. v. Palmer,*
  970 F.2d 1067 (2d Cir. 1992)................................................................8

*Arrow Productions, LTD. v. Weinstein Co. LLC,*
  44 F. Supp. 3d 359, 370 (S.D.N.Y. 2014) ...........................................13

*Authors Guild v. Google, Inc.,*
  804 F.3d 202 (2d Cir. 2015)...........................................................13, 14

*Bill Graham Archives v. Dorling Kindersely Ltd.,*
  448 F.3d 605 (2d Cir. 2006)....................................................9, 17, 18

*Blanch v. Koons,*
  467 F.3d 244 (2d Cir. 2006).......................................................*passim*

*Brass v. American Film Technologies, Inc.,*
  987 F.2d 142 (2d Cir. 1993).................................................................3

*Brownmark Films, LLC v. Comedy Partners,*
  682 F.3d 687 (7th Cir. 2012) ...............................................................6

*Burnett v. Twentieth Century Fox Film Corp.,*
  491 F. Supp. 2d 962 (C.D. Cal. 2007) ..................................................6

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569, 114 S.Ct. 1164 (1994)........................................*passim*

*Cariou v. Prince,*
  714 F.3d 694 (2d Cir. 2013)......................................................*passim*

*Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.,*
  150 F.3d 132 (2d Cir. 1998)......................................................*passim*

*Davis v. Gap, Inc.,*
  246 F.3d 152 (2d Cir. 2001).........................................................7, 17

*Eldred v. Ashcroft,*
  537 U.S. 186, 123 S.Ct. 769 (2003)....................................................2

*Fitzgerald v. CBS Broadcasting, Inc.,*
  491 F. Supp. 2d 177 (D. Mass. 2007) ................................................15

*Fox News Network, LLC v. TVEyes, Inc.*,
    43 F. Supp. 3d 379, 393-94 (S.D.N.Y. 2014) ........................................................13

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539, 105 S.Ct. 2218 (1985) ...........................................................14, 15

*Hofheinz v. A & E Television Networks, Inc.*,
    146 F. Supp. 2d 442 (S.D.N.Y.2001) ...........................................................12, 16

*Hofheinz v. AMC Productions, Inc.*,
    147 F. Supp. 2d 127 (E.D.N.Y. 2001) ...........................................................11, 16

*Hofheinz v. Discovery Communications, Inc.*,
    No. 00 Civ. 3802(HB), 2001 WL 1111970 (S.D.N.Y. Sept. 20, 2001).....................11, 16

*Kane v. Comedy Partners*,
    No. 00 Civ. 158(GBD), 2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003) .....................11, 13

*Katz v. Chevaldina*,
    No. 12 Civ. 22211, 2014 WL 2815496 (S.D. Fla. June 17, 2014) ...........................14

*Keeling v. Hars*,
    809 F.3d 43 (2d Cir. 2015)......................................................................9

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ..................................................................15

*Leadsinger, Inc. v. BMG Music Publishing*,
    512 F.3d 522 (9th Cir. 2008) ....................................................................6

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir. 1998)................................................................16, 18

*Levingston v. Earle*,
    No. CV-12-08165-PCT-JAT, 2014 WL 1246369 (D. Ariz. Mar. 26, 2014) ....................6

*Los Angeles News Service v. KCAL-TV Channel 9*,
    108 F.3d 1119 (9th Cir. 1997) ..................................................................1

*Michaels v. Internet Entertainment. Group, Inc.*,
    No. CV 98-0583(CWx), 1998 WL 882848 (C.D. Cal. Sept. 11, 1998)........................12

*Monster Communications, Inc. v. Turner Broadcasting System, Inc.*,
    935 F. Supp. 490 (S.D.N.Y. 1996) ...........................................................14, 16

*North Jersey Media Group Inc. v. Pirro*,
    74 F. Supp. 3d 605, 619-20 (S.D.N.Y. 2015) ..................................................14

*Nunez v. Caribbean International News Corp.*,
   235 F.3d 18 (1st Cir. 2000)................................................................................9, 11

*NXIVM Corp. v. Ross Institute*,
   364 F.3d 471 (2d Cir. 2004)..........................................................7, 8, 12, 17

*Righthaven LLC v. Realty One Group, Inc.*,
   No. 2:10-cv-1036-LRH-PAL, 2010 WL 4115413 (D. Nev. Oct. 19, 2010)...........................6

*Ringgold v. Black Entertainment Television, Inc.*,
   126 F.3d 70 (2d Cir. 1997).....................................................................................1, 8

*Savage v. Council on American–Islamic Relations, Inc.*,
   No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008) ...........................................6

*Scott v. WorldStarHipHop, Inc.*,
   No. 10 Civ. 9538 (PKC)(RLE), 2011 WL 5082410 (S.D.N.Y. Oct. 25, 2011).......................6

*SOFA Entertainment, Inc. v. Dodger Productions, Inc.*,
   709 F.3d 1273 (9th Cir. 2013) .......................................................................12, 16

*Swatch Group Management Services Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014)...........................................................................2, 12, 18

*TCA Television Corp. v. McCollum*,
   839 F.3d 168 (2d Cir. 2016).........................................................................5, 8, 14

*Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*,
   342 F.3d 191 (3d Cir. 2003)..................................................................................16

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
   2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) ...................................................15

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
   No. 98 Civ. 7128(BSJ), 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) ...........................11, 18

*Wade Williams Distribution, Inc. v. American Broadcasting Company, Inc.*,
   No. 00 Civ. 5002(LMM), 2005 WL 774275 (S.D.N.Y. Apr. 5, 2005)...................................11

*Wright v. Warner Books, Inc.*,
   953 F.2d 731 (2d Cir. 1991).........................................................................8, 15

## Statutes

17 U.S.C. § 106 ...............................................................................................5

17 U.S.C. § 501 ...............................................................................................5

17 U.S.C. § 107 ...............................................................................2, 8, 12, 15

**Other Authorities**

FED. R. CIV. P. 12(b)(6) ...................................................................................1, 3, 18

2 Howard B. Abrams, *The Law of Copyright*, § 15:52 (2006) ....................................13

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05[A][1][a],
    at 13–162 (Matthew Bender, rev. ed., 2016) ..........................................................8

*Nimmer on Copyright* § 13.05[A][2][a] ....................................................................14

Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111
    (1990) ......................................................................................................................10

Defendants respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

## PRELIMINARY STATEMENT

This case presents a textbook example of a fair use.  Defendant ABC reported and commented on a socially significant and newsworthy event: the phenomenon of a couple using the Facebook Lives program to publicly broadcast their son's birth on the Internet (the "Video"). As part of that reporting, ABC used a tiny fraction of the footage—22 seconds from the original 45 minute Video—to explain what the story was about, to enable viewers to understand and form an opinion about the couple's actions, and to enable ABC journalists to comment on the event. The story also appeared on a Yahoo! News website that hosts content from ABC News.

In the Complaint, Kanongataa claims that ABC's reporting infringed his copyright in the Video.  There is no legal basis for this claim; courts repeatedly and consistently have found such use to be "fair use."  Where pictures or videotapes themselves are the focus of a major news story, news reporters may make brief use of selected footage to explain to the public what the story is about.  *See, e.g.*, *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) ("the case for a fair use defense would be extremely strong" were a "TV news program" to use visual works to comment upon their significance); *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997) (observing "there is a forceful argument" for fair use when a news organization reports on and shows portions of a videotape that itself is newsworthy).

If the Copyright Act did not permit ABC to engage in this type of use, it would substantially inhibit important First Amendment activities by enabling copyright holders to exercise control over the public's ability to understand news events.  The Copyright Act

specifically avoids this outcome.  The Copyright Act "contains built-in First Amendment accommodations," among them the fair use doctrine, which "allows the public to use not only facts and ideas contained in a copyrighted work, *but also expression itself in certain circumstances*."  *Eldred v. Ashcroft*, 537 U.S. 186, 219, 123 S.Ct. 769, 788-89 (2003) (emphasis added).  The Copyright Act expressly provides that "the fair use of a copyrighted work . . . for purposes such as criticism, *comment*, [or] *news reporting*, . . . is not an infringement of copyright."  17 U.S.C. § 107 (2016) (emphasis added).  The fair use doctrine is especially sensitive to attempts to use Copyright to restrict news reporting activity.  *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (noting in a fair use analysis that "deliver[ing] newsworthy . . . information . . . lies at the core of the First Amendment [and] would be crippled if the news media and similar organizations were limited to authorized sources of information.").

ABC's use of brief, edited footage from the Video for the purposes of news reporting and commentary falls squarely within the Copyright Act's protections for fair use.  As shown below, all of the factors relevant to the fair use analysis weigh heavily in favor of fair use here.  Plaintiff's Complaint should be dismissed with prejudice and without leave to amend.

## SUMMARY OF FACTS AND ALLEGATIONS

### I.    THE PARTIES

According to the Complaint, Kanongataa is the owner of the Polynesian Cultural Exchange, a non-profit organization that helps those of Pacific Islander descent utilize their talents.  Compl. ¶ 5, Sept. 22, 2016, Dkt. 1.

Defendant ABC is a broadcast television network.  Among other things, ABC produces the national daily morning television news program *Good Morning America*.  Compl. ¶ 6.  ABC

also makes available *Good Morning America* episodes online, at http://abcnews.go.com/.  *Id.*

Defendant Yahoo! Inc. is the owner of a website, www.yahoo.com.  *Id.* ¶ 7.

## II.      PLAINTIFF'S ALLEGATIONS

According to the allegations in the Complaint, on May 16, 2016 Kanongataa made a 45

minute live broadcast on the Internet of his partner giving birth to their son.  Compl. ¶ 8;

https://www.facebook.com/PolynesianNonprofit/videos/1073990016008022/ (last visited

November 18, 2016) (hereinafter "Plaintiff's Facebook Account"); Declaration of Nathan Siegel,

dated November 21, 2016 ("Siegel Decl.") Ex. A.[1]  Kanongataa broadcast the Video via

"Facebook Live."  *Id.*  Kanongataa claims this broadcast was "Facebook's First Live Birth."

Compl. ¶ 1.  The Video remains publicly accessible on Kanongataa's Facebook account.

Plaintiff's Facebook Account; Sigel Decl. ¶ 3 and Ex. B.

The Video is an unedited, amateur video that appears to have been filmed with a

smartphone.  *See* Siegel Decl. Ex. A.  It last for approximately 45 minutes and depicts, in real

time, labor and delivery from Plaintiff's point of view and includes: personal and medical

conversations between Plaintiff, his partner, and medical personnel; close-ups of medical

monitors and equipment in the hospital room; plaintiff's partner, partially naked and laboring to

deliver; medical personnel assisting the delivery and administering treatment; plaintiff

encouraging his partner while she delivers the baby; plaintiff's newly-born son crying and being

treated by medical personnel; plaintiff praying and welcoming his son; and, finally, the mother

---

[1] In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  Kanongataa incorporates by reference and relies on in bringing his claim the Video published on his Facebook page May 16, 2016.  *See* Compl. ¶ 8.  For the Court's convenience, the materials referenced in the Complaint are attached to the Affirmation of Nathan Siegel submitted with this motion.

and child wrapped in blankets recovering from childbirth while Plaintiff talks to them and admires the baby. *Id.*

The following day, May 17, 2016, the ABC daily news program, *Good Morning America*, reported on the fact that a couple had used the new Facebook Live utility to publicly broadcast their child's birth (the "GMA broadcast"). The GMA broadcast also was published on the ABC website, Compl. ¶¶ 11, 12 & Ex. A (video available at: http://abcnews.go.com/GMA/video/man-facebook-live-stream-wife-giving-birth-39178353); Siegel Decl. Ex. C, and on a Yahoo! News website that hosts content from *Good Morning America*, Compl. ¶ 14 & Ex. B (video also available at: https://gma.yahoo.com/video/man-uses-facebook-live-stream-200930741.html); Siegel Decl. Ex. D.[2]

During the GMA broadcast, host Amy Robach introduced clips from the Video with the following commentary:

> ROBACH: Well we have a far more positive livestream experience to share with you. This one actually showing the miracle of life. A woman in California gave birth live on Facebook, the delivery captured in real time, shared by her husband, who happens to be a comedian. The video mostly focused on mom's face. Their healthy baby boy made his entrance 37 minutes into the livestream. Quickly racked up thousands of views, with the new dad telling viewers "'thanks for enjoying the gift of life with me.'"

*See* Compl. ¶¶ 12, 14; Siegel Decl. Exs. C & D.

While Ms. Robach spoke, ABC showed a series of brief clips from the 45 minute Video, each lasting only a few seconds and totaling approximately 22 seconds of footage. *Id.* Unlike the Video itself, some of the clips as edited by ABC do not contain any audio because Ms. Robach talks over the clips. *Id.* The clips show, in short succession, plaintiff's partner laboring

---

[2] Since there is only one news story at issue here, the same ABC News report that appeared on the two Defendants' websites, this memorandum refers to it as ABC's report throughout.

in a hospital bed with medical personal standing around her; his newborn son being dried with a towel; and his partner, wrapped in a blanket, embracing her son.  *Id.*  At the top of the screen, ABC credited plaintiff with the video footage.  *Id.*  At the bottom of the screen a large banner appeared, showing a Facebook symbol, GMA and ABC symbols, and the headline "NEW THIS MORNING, COUPLE LIVESTREAMS BABY'S BIRTH, BROADCASTS DELIVERY LIVE ON FACEBOOK."  *Id.*

The GMA broadcast then cut back to hosts Michael Strahan, George Stephanopoulos, and Amy Robach, who commented on the Video and the couple's decision.  *Id.*

> ROBACH:  That is a very sharing mother.  I don't know that I
> would have felt the same way.
> STRAHAN:  Yeah.  Well, you know, that's something that's
> caught on tape.  I would never have considered that if I were ever
> to have a baby.  I'll tell you that.

*Id.*

The Complaint alleges that ABC's public display of portions of the Video during the GMA broadcast and on the GMA website infringed Plaintiff's copyright in the Video, in violation of 17 U.S.C. §§ 106, 501.  Compl. ¶ 1.

## ARGUMENT

## I.   DEFENDANTS' FAIR USE ARGUMENTS ARE PROPERLY CONSIDERED AT THIS TIME

Courts in this and other circuits have affirmed that copyright infringement claims may be dismissed on fair use grounds on a motion to dismiss, where a comparison of the two works at issue is sufficient to decide the question of fair use.  *See, e.g.*, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("this court has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim"); *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (citing with approval

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (affirming dismissal of a copyright claim on fair use grounds)); *Scott v. WorldStarHipHop, Inc.*, No. 10 Civ. 9538 (PKC)(RLE), 2011 WL 5082410, at *8 (S.D.N.Y. Oct. 25, 2011) (Fair use may be raised at the motion to dismiss stage if it "'appears on the face of the complaint.'" (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998))), *vacated on other grounds by* 2011 WL 13079877 (S.D.N.Y. Dec. 12, 2011); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008) (affirming an "assertion of fair use may be considered on a motion to dismiss, which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute"); *Savage v. Council on American–Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *4–9 (N.D. Cal. July 25, 2008) (granting Rule 12(c) motion for judgment on the pleadings based on fair use defense); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 972 (C.D. Cal. 2007) (granting defendant's motion to dismiss on fair use grounds); *Levingston v. Earle*, No. CV-12-08165-PCT-JAT, 2014 WL 1246369, at *2 (D. Ariz. Mar. 26, 2014) (dismissing *sua sponte* infringement claim on fair use grounds); *Righthaven LLC v. Realty One Grp., Inc.*, No. 2:10-cv-1036-LRH-PAL, 2010 WL 4115413, at *2 (D. Nev. Oct. 19, 2010) (same).

    This is precisely the type of case that is ripe for dismissal now.  The Complaint, together with the evidence attached thereto as exhibits or incorporated by reference, is all that is needed to decide the question of fair use.  They show that the briefs clips from the Video: were used for news reporting and commentary; were used transformatively; were factual in nature; were previously published on Facebook; represented a negligible fraction of the original Video; were not a substitute for the original, which in any event may be viewed without charge; and were

filmed by a comedian to show people his son's birth.  Consequently, this Court should simply apply the statutory factors to the pleadings, and find fair use as a matter of law.

## II.     ABC'S USE OF SHORT CLIPS FROM THE VIDEO IS A FAIR USE

The Copyright Act specifies four non-exclusive factors that must be considered to determine whether a particular use is fair: (1) the purpose and character of the use; (ii) the nature of the copyrighted work; (iii) the amount and substantiality of the portion used; and (iv) the effect of the use on the market for the original.  This is "an open-ended and context-sensitive inquiry." *Cariou*, 714 F.3d at 705 (citations omitted).  The "ultimate test of fair use, therefore, is whether the copyright law's goal of 'promoting the Progress of Science and useful Arts' . . . would be better served by allowing the use than by preventing it." *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (brackets, quotation, and citations omitted).  As shown below, all four factors weigh in Defendants' favor.

### A.     The Purpose and Character of ABC's Use Favors a Finding of Fair Use

The first statutory factor, the purpose and character of the use, is "'[t]he heart of the fair use inquiry.'" *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (quoting *Davis v. Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001)).  Courts have developed three guidelines for applying this factor.  They are: (1) whether the material was used for any of the favored purposes specifically mentioned in the statute, and (2) whether the defendant used the material for a meaningfully different or "transformative" purpose than the original.  If so, then (3) whether the defendant is a for-profit or non-profit entity deserves little consideration.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-79, 114 S.Ct. 1164, 1171 (1994); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004), *cert. denied*, 543 U.S. 1000, 125 S. Ct. 607 (2004).  These guidelines overwhelmingly favor a finding of fair use here, as a matter of law.

7

1.   <u>ABC used the clips for comment and news reporting</u>

ABC used brief clips from the Video as part of reporting news about the socially significant phenomenon of a couple using Facebook Live to live broadcast their child's birth, and to comment on that event.  As plaintiff himself alleges, this was thought to be the first time Facebook Live had been used to broadcast a birth.  The GMA broadcast explained to viewers what had happened, showed them brief clips from the Video to illustrate what the livestreamed birth looked like, and then commented on the couple's unusual decision.

 "Comment" and "news reporting" are favored uses under the Copyright Act, specifically identified as likely fair use.  *See* 17 U.S.C. § 107; *TCA Television Corp.*, 839 F.3d at 179 ("[T]he uses identified by Congress in the preamble to § 107" are "'most appropriate' for a purpose of character finding indicative of fair use." (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05[A][1][a], at 13–162 (Matthew Bender, rev. ed., 2016))).  The Second Circuit has repeatedly held that where a defendant's use is one of the uses identified in § 107, there will be a "strong presumption that factor one favors the defendant."  *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991).  *See also NXIVM Corp.*, 364 F.3d at 477 (same); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1077 (2d Cir. 1992) (same).  That presumption clearly applies to ABC's use of a few clips from the Video.

Even more importantly, this particular news broadcast reflected the archetypical example of a fair use because the streaming of the Video itself was what was newsworthy, not the underlying event depicted in the video.  As the Second Circuit has explained, "the case for a fair use defense would be extremely strong" were a "TV news program" to use visual works to comment upon their significance."  *Ringgold*, 126 F.3d at 79.  That is exactly what happened here.  The mother, child and medical professionals depicted in the video are never identified in the story, because the fact of that particular baby's birth was not the point of the news story.

8

Rather, what was significant was the livestreaming of a birth on Facebook, and the brief clips from the Video were used to show the public what that looked like.

Courts in other jurisdictions likewise hold that when a photograph or video itself becomes newsworthy, the news media may fairly depict it to report that story even if it is necessary to use the entire work, which was certainly not the case here.  For example, in *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000), a newspaper reported about the fact that a beauty pageant winner had appeared in nude modeling photos, and showed some of the photos.  The First Circuit held that it was a fair use to show the photos, because the existence of the pictures themselves was the newsworthy item.  *Id. at* 22 ("[T]he pictures were the story.  It would have been much more difficult to explain the controversy without reproducing the photographs." (quotation omitted)).  The same is true here.

### 2.   ABC's use of clips from the Video was transformative

The most important factor in the fair use analysis is whether the secondary use was transformative.  *See Bill Graham Archives v. Dorling Kindersely Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) ("Most important to the court's analysis of the first factor is 'transformative' nature of the work.").  Transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright . . . . and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579, 114 S.Ct. at 1171.  *See also Keeling v. Hars*, 809 F.3d 43, 53 (2d Cir. 2015) ("As a legal matter, the four factors do not each carry equal weight . . . indeed, some may not be relevant at all. . . . [T]he first factor—'the purpose and character of the use,' 17 U.S.C. § 107—lies at the 'heart of the inquiry' . . . while the other three factors are much less important."), *cert. denied*, 136 S. Ct. 2519 (2016).

A work is 'transformative' when the new work does not "merely supersede[ ] the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message . . . ." *Campbell*, 510 U.S. at 579, 114 S.Ct. at 1171.  Where a different use "provide[s] a social benefit," it is more likely to be transformative.  *Id.*  "If the secondary use adds value to the original—if [the original] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society."  *Castle Rock*, 150 F.3d at 142 (quotation and citation omitted).  "For a use to be fair, it 'must be productive and must employ the quoted matter in a different manner or for a different purpose from the original.'"  *Cariou*, 714 F.3d at 706 (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111 (1990)).

A comparison of the Video and the GMA broadcast makes clear the highly transformative nature of ABC's use.  The Video is 45 minutes of amateur footage.  It depicts, in real time and intimate detail, the later stages of labor and delivery from Plaintiff's point of view.  It is unedited and without any introduction, narrative commentary, or other context.  And its purpose is to enable family, friends, or anyone else to watch the entire last phase of the birth of this particular baby.

In contrast, the GMA broadcast has a different purpose and an entirely different character.  It is a short news broadcast whose purpose was to report to the public, and comment on, the unusual phenomenon of a couple using Facebook Live to publicly broadcast their child's birth.  The GMA broadcast enhanced the Video by adding a title, graphics, and narration to provide context to the brief clips used, by explaining why the public had access to the Video and what its significance was.  ABC edited the Video to use only 22 seconds from the 45 minute

film, and then further edited the Video to remove some of the audio while the news anchor

explained the underlying video clips.  The news presenters then added commentary, expressing

through humor their opinions about the couple's controversial decision to broadcast what

typically is a private occasion.

The purpose and effect of the GMA broadcast was very different from the original Video.

The purpose and effect of the Video was to enable viewers to experience a particular child's birth

as if they were in the room, not to report a news story about livestreaming births or to comment

on whether this is a sound practice.  Just like the newspaper in *Nunez*, these Defendants' effected

"the transformation of the work[] into news."  *Nunez*, 235 F.3d at 23.  The GMA broadcast is

therefore precisely the kind of use for commentary and news reporting that courts repeatedly

have deemed "transformative."  *See, e.g.*, *Wade Williams Distribution, Inc. v. Am. Broad. Co.,

Inc.*, No. 00 Civ. 5002(LMM), 2005 WL 774275, at *9 (S.D.N.Y. Apr. 5, 2005) (use by *Good

Morning America* of brief clips from alien movies as part of reporting and commentary on the

history and merits of alien films was "clearly transformative"); *Kane v. Comedy Partners*, No. 00

Civ. 158(GBD), 2003 WL 22383387, at *4 (S.D.N.Y. Oct. 16, 2003) (use of brief clip from a

public access television show, accompanied by comment and ridicule on its quality, was

transformative), *aff'd* 98 F. App'x. 73 (2d Cir. 2004); *Video-Cinema Films, Inc. v. Cable News

Network, Inc.*, No. 98 Civ. 7128(BSJ), 2001 WL 1518264, at *6 (S.D.N.Y. Nov. 28, 2001) (use

of brief film clips to report on the death of the actor Robert Mitchum was transformative; the

original film was intended to entertain, the news report "aimed to inform the viewing public of

Mitchum's death and educate them regarding his impact on the arts."); *Hofheinz v. AMC Prods.,

Inc.*, 147 F. Supp. 2d 127, 137 (E.D.N.Y. 2001) (use of brief film clips as part of documentary

film about the development of the monster movie genre was transformative); *Hofheinz v.*

11

*Discovery Commc'ns, Inc.*, No. 00 Civ. 3802(HB), 2001 WL 1111970, at *4 (S.D.N.Y. Sept. 20, 2001) (use of clips from alien film in documentary about alien films was transformative); *Hofheinz v. A & E Television Networks, Inc.*, 146 F. Supp. 2d 442, 446-47 (S.D.N.Y.2001) (use of film clips in a biographical film to "enable[e] the viewer to understand the actor's modest beginnings in the film business" was transformative); *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278-79 (9th Cir. 2013) (musical's use of a seven-second clip from Ed Sullivan Show as a "biographical anchor" in telling the story of a band was transformative); *Michaels v. Internet Entm't. Grp., Inc.*, No. CV 98-0583(CWx), 1998 WL 882848 (C.D. Cal. Sept. 11, 1998) (tabloid new program's use of eight short clips, 2 to 5 seconds in length, from celebrity sex tape "to illustrate its news story about the Tape's imminent release" was transformative).  Because ABC's use clearly was transformative, this element—the 'heart of the inquiry' into fair use— weighs heavily in Defendants' favor.

### 3.    ABC's status as a for-profit entity is not relevant

Finally, the first fair use factor considers whether the allegedly infringing work has a commercial or nonprofit educational purpose.  *Cariou*, 714 F.3d at 708.  However, the Supreme Court has made clear that where material is used for a transformative purpose favored by § 107, the defendant's status as a commercial entity does not create any presumption of unfairness. *Campbell*, 510 U.S. at 584, 114 S.Ct. at 1174; *see also NXIVM Corp.*, 364 F.3d at 477 ("The Supreme Court in *Campbell* rejected the notion that the commercial nature of the use could by itself be a dispositive consideration.").  This is because "nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting . . . are generally conducted for profit."  *Campbell*, 510 U.S. at 584, 114 S.Ct. at 1174 (citation and quotation omitted); *see also Cariou*, 714 F.3d at 708 (same); *Swatch*, 756 F.3d at 83 (recognizing that "almost all" media

enterprises are commercial and therefore assigning "relatively little weight" to this factor); *Castle Rock*, 150 F.3d at 142 ("[We] do not give much weight to the fact that the secondary use was for commercial gain."); *Kane*, 2003 WL 22383387, at *3 ("[T]he Supreme Court has discounted the force of commerciality in applying a fair use analysis.").

Where, as here, the allegedly infringing work clearly is transformative, the "commercial" factor is of little significance. "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579, 114 S.Ct. at 1171. Courts in this circuit repeatedly have deemed this factor largely irrelevant to the fair use analysis where a work was transformative. *See, e.g.*, *Authors Guild v. Google, Inc.*, 804 F.3d 202, 219 (2d Cir. 2015) (commercial motivation deemed of little significance where there was a "highly convincing transformative purpose, together with the absence of significant substitutive competition."); *Blanch*, 467 F.3d at 244 (where the new work was substantially transformative, "[w]e therefore discount the secondary commercial nature of the use." (quotation and citation omitted)); *Fox News Network, LLC v. TVEyes, Inc.*, 43 F. Supp. 3d 379, 393-94 (S.D.N.Y. 2014) (fair use analysis not affected by profits where the work was transformative); *Arrow Prods., LTD. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 370 (S.D.N.Y. 2014) ("[T]he court does not place very much significance on this part of the first fair-use factor given the transformative nature of the work.").

### B. The Nature of the Copyrighted Work Weighs in Favor of Fair Use

The second factor in the fair use analysis is the nature of the copyrighted work. Courts consider "'(1) whether the work is expressive or creative, . . . with a greater leeway being allowed a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower.'" *Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, *The Law of*

*Copyright*, § 15:52 (2006)).  Here, both elements weigh heavily in favor of fair use.

As to the first element, whether the work is expressive or creative, the underlying Video is a factual, unedited recording of a child's birth.  The fact that the Video is a non-fiction work weighs heavily in favor of Defendants' fair use.  "[T]he more informational or functional the plaintiff's work, the broader should be the scope of the fair use defense."  *Nimmer on Copyright* § 13.05[A][2][a].  *See also TCA Television Corp.*, 839 F.3d at 184 ("[T]he secondary user of noncreative information can more readily claim fair use based on the law's recognition of 'a greater need to disseminate factual works than works of fiction or fantasy.'"  (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563, 105 S.Ct. 2218, 2231 (1985))); *Authors Guild*, 804 F.3d at 220 & n.21 (explaining that factual works "often present well justified fair uses" because "there is often occasion to test the accuracy of, to rely on, or to repeat their factual propositions," which "may reasonably require quotation"); *Castle Rock*, 150 F.3d at 143-44; *Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) ("There is a public interest in receiving information concerning the world in which we live. The more newsworthy the person or event depicted, the greater the concern that too narrow a view of the fair use defense will deprive the public of significant information.").

Courts in this and other circuits have thus found that video or photographic depictions of real events weigh in favor of fair use—even when professional photographers made the images or recordings, which is certainly not the case here.  *See, e.g.*, *North Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 619-20 (S.D.N.Y. 2015) (photograph of the attacks on the World Trade Center were "a non-fictional rendering" "created for news gathering or other non-artistic purposes" and therefore this factor weighed "heavily in favor of fair use."); *Katz v. Chevaldina*, No. 12 Civ. 22211, 2014 WL 2815496, at *1 (S.D. Fla. June 17, 2014) (where the work at issue

14

was a candid picture of a man at basketball practice and there was "no evidence that the photographer influenced, at all, the [subjects] activity, pose, expression or clothing" and the photograph conveyed no creative ideas, this factor weighed in favor of fair use); *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007) (freelance photographer's images of a well-known mobster, as he was being walked out of a police station, was a factual work and this factor weighed in favor of fair use).  As in those cases, the factual, documentary nature of the Video weighs in favor of fair use.

As to the second element, whether the work is unpublished, it is undisputed that plaintiff published the Video to the general public prior to ABC's use—indeed, it was the very fact that Kanongataa had published the Video on the Internet that made it newsworthy.  *See* Compl. ¶¶ 8, 11-14.  Use of a published work is "more likely to qualify as fair use because the first appearance of the artist's expression has already occurred."  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003).  *See also Harper & Row Publishers, Inc.*, 471 U.S. at 540, 105 S.Ct. at 2220; *Blanch*, 467 F.3d at 256.  This element also weighs heavily in favor of Defendants' fair use.

## C.   The Amount and Substantiality of the Portion Used Weighs in Favor of Fair Use

The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107, also weighs heavily in favor of fair use.  In making this determination, the court considers whether "the portion used formed a significant percentage of the copyrighted work."  *Warner Books*, 953 F.2d at 738.  Here, ABC used 22 seconds of film clips from a 45 minute recording, approximately 0.8% of the Video.  Courts in this Circuit have consistently found such a miniscule use of a longer video to be fair.  *See, e.g.*, *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 2003 WL 1701904, at *7 & n.19 (S.D.N.Y. Mar. 31, 2003) (use of clips of 6 to 22 seconds, less than 1% of 108 minute film, was

fair use; "The Second Circuit has consistently found fair use in cases where only a small portion of the original work was used." (collecting cases)); *A & E Television Networks, Inc.*, 146 F. Supp. 2d at 447-48 (use of 20 second clip from 70 minute film was fair use); *Discovery Comm'ns.*, 2001 WL 1111970, at *6 (use of clips of 48 and 32 seconds was fair use); *AMC Prods., Inc.*, 147 F. Supp. 2d at 139 (use of clips of between fifteen and forty-four seconds was fair use; "Such *de minimus* amounts of a full-length feature film and such *de minimus* showings from the originals favor a finding of fair use."); *Monster Commc'ns., Inc.*, 935 F. Supp. at 495-96 (use of 1% of original film was fair use). Courts in other jurisdictions have reached the same conclusion. *See also SOFA Entm't*, 709 F.3d 1273 at 1280 (use of seven-second clip from television show was fair use); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 201 (3d Cir. 2003) (use of two minute montage of film's title and opening credit, one or two brief scenes, and closing title, was fair use), *cert. denied*, 540 U.S. 1178, 124 S.Ct. 1410 (2004). ABC's use of less than 1% of the Video weighs heavily in favor of fair use.

The Court also should consider not just the quantity used, but "'whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying.'" *Cariou*, 714 F.3d at 710 (quoting *Blanch*, 467 F.3d at 257). The secondary use "'must be [permitted] to 'conjure up' at least enough of the original' to fulfill its transformative purpose." *Id.* (quoting *Campbell*, 510 U.S. at 588, 114 S.Ct. at 1176); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 114 (2d Cir. 1998). The use of less than 1% of the Video was reasonable and directly fulfilled the GMA broadcast's transformative purpose. As shown above, the purpose of the GMA broadcast was to inform viewers that a couple had broadcast their son's birth live, via Facebook, an unprecedented and controversial event, and to engage in commentary about the value or intrusiveness of such a broadcast. That task required some display of actual footage

16

from the broadcast.  The very limited quantity and substance of the material used was reasonable and proportional to that transformative purpose.  That too weighs heavily in favor of fair use. *See, e.g.*, *NXIM Corp.*, 364 F.3d at 481 (where the use was "reasonably necessary" "to support [defendant's] critical commentary", this factor favored fair use).

> **D.      The Effect of the Use Upon the Potential Market Weighs in Favor of Fair Use**

Finally, the fourth factor also weighs in favor of fair use because the 22 seconds of silent footage shown by ABC clearly is no substitute for the original, 45 minute Video.  As the Second Circuit stated in *Cariou,* "[w]e have made clear that 'our concern is *not* whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use *usurps* the market of the original work.'" 714 F.3d at 708 (quoting *Blanch*, 467 F.3d at 258).  A secondary use "usurps" the market "where the infringer's target audience and the nature of the infringing content is the same as the original." *Id.* at 709.  In other words, "the focus . . . is on whether defendants are offering a market substitute for the original." *NXIVM Corp.*, 364 F.3d at 481.  When conducting this analysis, "[t]he more transformative the secondary use, the less likelihood that the secondary use substitutes for the original." *Cariou*, 714 F.3d at 709; *Bill Graham Archives*, 448 F.3d at 614-5 (secondary use does not affect the market for the original where it is "transformatively different from their original expressive purpose."); *Davis*, 246 F.3d at 175; *Castle Rock*, 150 F.3d at 145 n.11.

As shown above, ABC's use was highly transformative and cannot substitute for the original.  The GMA broadcast showed 22 seconds of partially silent footage, overlaid with the host's commentary about the Video and enhanced with graphics.  It was a news program that provided a very brief insight into the existence and nature of the Video, which was quite different than Plaintiff's original purpose in livestreaming the entire last 45 minutes of his son's birth and the couple's experience in giving birth.

17

Moreover, the GMA story can hardly be said to interfere with any "market" for the Video itself, given that the Plaintiff is a comedian who livestreamed the Video to the general public for free.  He does not allege that he is a photojournalist in the business of taking and licensing video to news organizations.  And even if he was, the Second Circuit has made clear that it would not make a difference.  Where a use is transformative, as a matter of law, "copyright owners may not preempt exploitation of transformative markets" by claiming that they could have tried to charge a license fee.  *Castle Rock*, 150 F.3d at 146 n.11; *Bill Graham Archives*, 448 F.3d at 614. Rather, where, as here, "Defendants have produced a transformative work that would otherwise qualify for fair use, and Defendant[s'] work does not interfere with the market for the original, the fourth factor favors the [D]efendants as a matter of law.  *Video-Cinema Films, Inc.*, 2001 WL 1518264, at *8 (citing *Leibovitz*, 137 F.3d at 116-17).  Consequently, this fourth fair use factor also weighs in Defendants' favor.

### E.    The Balance of the Factors, Taken Together With the Public Interest, Demonstrates that Fair Use Was Made

In sum, based on the 12(b)(6) record, it is clear that all four statutory factors weigh heavily in favor of Defendants' defense of fair use.  Moreover, if a news organization cannot explain to the public why a video is newsworthy by providing a brief example of its content, copyright holders could exercise a monopoly over the public's access to newsworthy information.  In fact, it is plain that Plaintiff is simply using the Copyright Act to try to capitalize on the fact that a Video livestreamed for his own personal purposes unexpectedly became a newsworthy event, and so he has sued at least a half-dozen news organizations which reported that story.  Balancing these factors and the allegations in the Complaint, it is clear that "the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing [Defendants'] use than by preventing it."  *Swatch*, 756 F.3d at 92 (quotation

18

and citations omitted).  The Complaint should be dismissed without leave to amend because no attempt to replead could overcome Defendants' fair use defense.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss the Complaint with prejudice.

Dated: November 21, 2016          Respectfully submitted,
New York, New York

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: _____
    Nathan E. Siegel
    Dana R. Green
1899 L Street NW, Suite 200
Washington, DC 20036
Tel: (202) 508-1100
Fax: (202) 861-9888
nsiegel@lskslaw.com

*Counsel for Defendants*

19

## **CERTIFICATE OF SERVICE**

I, Dana R. Green, hereby certify that on November 21, 2016, I caused true and correct copies of Defendant ABC's Memorandum of Law in Support of Its Motion to Dismiss to be served by ECF upon:

> Richard Liebowitz
> Liebowitz Law Firm, PLLC
> 11 Sunrise Plaza, Suite 305
> Valley Stream, NY 11580
> Tel: (516) 233-1660
> RL@LiebowitzLawFirm.com
>
> *Attorney for Plaintiff*

_____

Dana R. Green