UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KALI KANONGATAA,

                    Plaintiff,

    - against -

AMERICAN BROADCASTING COMPANIES, INC.
AND YAHOO! INC.

                    Defendants.

ECF Case

No. 1:16-cv-7382(LAK)

---

KALI KANONGATAA,

                    Plaintiff,

    - against -

NBCUNIVERSAL MEDIA, LLC

                    Defendant.

ECF Case

No. 1:16-cv-7383(LAK)

---

KALI KANONGATAA,

                    Plaintiff,

    - against -

COED MEDIA GROUP, LLC

                    Defendant.

ECF Case

No. 1:16-cv-7472(LAK)

## **MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTIONS TO DISMISS**

LIEBOWITZ LAW FIRM PLLC

Richard P. Liebowitz
Yekaterina Tsyvkin

11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
kt@liebowitzlawfirm.com
Tel. (516)233 -1660

*Counsel for Plaintiff Kali Kanongataa*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... ii

PRELIMINARY STATEMENT..............................................................................................1

FACTUAL BACKGROUND...................................................................................................2

ARGUMENT..........................................................................................................................2

    I.      FAIR USE DEFENSE IS PREMATURE AT MOTION TO DISMISS STAGE.............................3

           A.  COURTS WARN ABOUT DECIDING FAIR USE WITHOUT FACTS...........................3

           B.  FAIR USE HAS TO BE EVIDENT FROM SIDE-BY-SIDE ANALYSIS...........................5

    II.     FAIR USE DEFENSE LACKS MERIT.............................................................................6

       A.  CHARACTER AND PURPOSE OF THE USE................................................... 6

          1.  First Factor Does Not Favor a Finding of Transformative Use.............................8

       B.  Second Factor is Neutral..............................................................................10

       C.  Third Factor Does Not Favor a Finding of Fair Use .......................................11

       D.  Fourth Factor Does Not Favor a Finding of Fair Use .....................................13

    III.    THE COMPLAINT SUFFICIENTLY PLEADS A DMCA CLAIM AGAINST COED...................13

       A.  COMPLAINT SETS FORTH A PLAUSIBLE SET OF FACTS.............................................15

       B.  THE DEFENDANT'S ARGUMENT THAT INTENT AND KNOWLEDGE HAVE NOT BEEN

          ESTABLISHED ARE PREMATURE.........................................................................16

       C.  DEFENDANT'S ARGUMENT THAT THE COMPLAINT MAKES CONCLUSORY

          ASSERTIONS REGARDING COED'S INTENT AND KNOWLEDGE ARE MERITLESS....17

          1.  Defendant's Argument Regarding the Sufficiency of Plaintiff's Complaint Has

             Been Rejected in the Second Circuit.....................................................................17

          2.  Defendant's Argument that It Credited the Author Are Groundless...............18

CONCLUSION .................................................................................................................19

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Agence France Presse v. Morel*, 769 F.Supp.2d 295(S.D.N.Y. Jan. 14 2011).................15-16

*Arista Records, LLC v. Doe 3*, 2010 WL 1729107 (2d Cir.).........................................14

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937..........(2009).................................13, 14

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87(2d Cir. 2014)......................................6-7

*BanxCorp. v Costco Wholesale Corporation*, 723 F.Supp.2d 596 (S.D.N.Y. July 2010)......15-17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544(2007)..................................................14, 15

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) ..............................................3, 10, 11

*BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir.2005)............................................. 5

*Browne v. McCain*, 612 F. Supp. 2d 1125 (C.D. Cal. 2009) .........................................4

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir.2012) ....................4, 5

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499 (S.D.N.Y. 2015)...3, 6, 13

*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013)............................................... 3, 6, 10

*Chevrestt v. Am. Media, Inc.*, No. 16 CIV. 5557, 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016)17

*David Young-Wolff v. McGraw Hill Companies*, 2014 WL 349711 (Jan. 14, 2014)...........14-15

*Devocean Jewelry LLC v. Associated Newspapers Ltd.*, No. 16-CV-2150 (KMW), 2016 WL
6135662 (S.D.N.Y. Oct. 19, 2016) ...........................................................12, 17

*E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505 (S.D.N.Y. 2008)...........................3-4

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, No. 15-CV-4244 (JGK), 2016 WL 4747281
(S.D.N.Y. Sept. 12, 2016)................................................................... 3

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).................................................................................................. 7-8

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir.2009).......................16

*Katz v. Chevaldina*, 900 F. Supp. 2d 1314 (S.D. Fla. 2012)........................................... 5

*LaChapelle v. Fenty*, 812 F. Supp. 2d 434 (S.D.N.Y. 2011)...........................................3

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir.2013) .........15

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir.2012) .......................................7

*M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 CIV. 7371 (JGK), 2008 WL 2696168 (S.D.N.Y. July 7, 2008)................................................................................... 3

*N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605 (S.D.N.Y. 2015) ...........................7

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir.2004). ...............................................13

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013).........................................................13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, (2d Cir.2010)..........13-14

*Playboy Enters. Int'l v. Mediatakeout.com LLC*, 2016 WL 1023321 (S.D.N.Y. Mar. 8, 2016)....3

*Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89 (D.D.C. 2015)................................ 4

*Ruotolo v. City of N.Y.*, 514 F.3d 184, (2d Cir. 2008).................................................13

*Skinner v. Switzer*, 131 S. Ct. 1280 (2011)..............................................................14

*Sony BMG Music Entm't v. Tenenbaum*, 672 F. Supp. 2d 217 (D. Mass. 2009) ...................4-5

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................................................13

*TCA Television Corp. v. McCollum*, 151 F. Supp. 3d 419 (S.D.N.Y. 2015) ........................7

*UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F.Supp.2d 349 (S.D.N.Y.2000) .....................4

*Vil v. Poteau*, No. 11-CV-11622-DJC, 2013 WL 3878741 (D. Mass. July 26, 2013) ..............4

*Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991)……………………………………... 3


**RULES and STATUTES**

17 U.S.C. § 107 ………………………………………………………………………………..6

17 U.S.C. §1202(b) ………………………………………………………………...15, 18, 19

Fed. R. Civ. P. 8(a) (2) …………………………………………………………………14

Fed. R. Civ. P. 9(b) …………………………………………………………………...16

Fed. R. Civ. P. 12(b)(6) …………………………………………………………...4, 13, 14


**Secondary Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1357, ……...……….13

Plaintiff Kali Kanongataa ("Plaintiff") respectfully submits this Memorandum of Law in Opposition of the Defendants' American Broadcasting Companies Inc. and Yahoo! Inc. ("ABC"), NBCUniversal Media, LLC ("NBC") and Coed Media Group, LLC (COED)'s Motions to Dismiss the Complaint.

<u>**PRELIMINARY STATEMENT**</u>

These cases arise out of an unfortunate circumstance in which the Plaintiff unintentionally and inadvertently broadcasted the birth of his child while thinking that only his close friends and family were witnessing the event. The video of the birth went viral and several prominent news organizations partook in the feasting over the Plaintiff's mistake. Without seeking permission or consent, these Defendants displayed this video on their morning shows to be seen by millions, posted it to their respective websites and social media platforms. They have immeasurably and shamelessly benefited and profited from an error committed by a private individual at a time when he was most vulnerable and unsuspecting. Now, unable to challenge the Plaintiff's legitimate claims, the Defendants turn to the repository of defenses for obvious copyright infringement – the much maligned and abused Doctrine of Fair Use. At first glance, these infringements may appear to be protected by Fair Use, but that impression is cursory and deceptive.

First, according to Second Circuit admonishment against ruling on fair use at the motion to dismiss stage – these motions are premature. Second, this is not the type of case where fair use may be considered early on by comparing two works side-by-side. This is neither a parody, nor so obviously fair use that the analysis of the four factors could not benefit from a more developed record. Third, on balance of the four factors, the fair use defense does not apply here. Weighing all the factors, which either favor the Plaintiff or are neutral and given the importance

1

the Second Circuit places on transformative use – a fair use defense fails.   In considering whether a use is transformative, the Courts in this Circuit have been very clear and the present facts mitigate against a finding of transformative use.   Finally, COED wrongly argues that its use was *de minimis* and that DMCA claim was not sufficiently pled.   That argument ignores a ruling in this District to the contrary.

## FACTUAL BACKGROUND

Plaintiff founded and runs a cultural exchange center.  His wife was pregnant with his son.  In an effort to share the joyous moment of birth with his close friends and far away family members, he recorded on his cellphone a video of the birth.  Thinking that he will just share it with a small group of people, he posted it on Facebook.  Unbeknownst to him, whether through the excitement of the moment or lack of facility with Facebook or just an error, the Plaintiff accidentally broadcasted the birth live on Facebook.  Anyone who was logged onto Facebook could see it, contrary to the Plaintiff's intentions.   The video of the birth went viral while the couple was getting acquainted with their newborn.   Several news organizations, including the Defendants picked up the video and displayed it national television bringing even more attention to it.

ABC showed clips from the video on Good Morning America, a top-rated morning show, had put the video on its website as well Yahoo! News website, which hosts GMA.  NBC broadcast the segment featuring the video clip twice during the Today Show, a competing top-rated morning show.   It also featured the video on its website.  COED published an article featuring a screenshot or screengrab of the video.

## ARGUMENT

2

# I.    FAIR USE DEFENSE IS PREMATURE AT MOTION TO DISMISS STAGE

## A.  COURTS WARN ABOUT DECIDING ON FAIR USE WITHOUT FACTS

Traditionally an affirmative defense, "in certain circumstances, fair use may be established at the motion-to-dismiss stage simply by placing the copyrighted work and the purportedly infringing work side-by-side and comparing their characteristics. *See Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013). To be sure, "there is a dearth of cases granting such a motion" at this early stage of litigation. *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015). Indeed, the fair-use defense is so fact-sensitive that the Second Circuit has instructed district courts to be "cautious" in granting *summary judgment* motions on this issue. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991); *see also Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) ("[T]he determination of fair use is an open-ended and context-sensitive inquiry"); *Playboy Enters. Int'l v. Mediatakeout.com LLC*, 2016 WL 1023321 (S.D.N.Y. Mar. 8, 2016); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *10 (S.D.N.Y. July 7, 2008) ("court should be cautious in finding fair use as a matter of law even on a motion for summary judgment"); *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011)("Due to the fact-driven nature of the fair use determination 'courts have found that fair use is usually unsuited to summary disposition'")(internal citations omitted); *accord Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, No. 15-CV-4244 (JGK), 2016 WL 4747281, at *10 (S.D.N.Y. Sept. 12, 2016), *reconsideration denied*, No. 15-CV-4244 (JGK), 2016 WL 6652733 (S.D.N.Y. Nov. 10, 2016). The consensus in this Circuit is clear that "[a]lthough affirmative defenses may be raised in a motion to dismiss, defenses such as the fair use doctrine involve a more detailed analysis of the facts at issue and are best resolved by summary judgment motions or adjudication at trial." *E.*

*Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505, 514 (S.D.N.Y. 2008); *see also* e.g. *UMG Recordings, Inc. v. MP3.com, Inc.,* 92 F.Supp.2d 349 (S.D.N.Y.2000) (addressing fair use on a partial motion for summary judgment).

In the present cases, however, the Defendants are asking the Court to consider a fair use defense before interposing an answer, before any discovery has taken place and when there's a paucity of facts on the record. The Defendants wrongly insist that fair use is evident on the face of the complaint. The Defendants mostly look to courts in other circuits to support the proposition that fair use could be considered on a motion to dismiss. Largely, the Defendants rely on *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687 (7th Cir.2012) (treating a motion to dismiss based on fair use as a motion for summary judgment and affirming because all the evidence needed to assess the defense had been provided). Besides have no precedential value, *Brownmark* decision effectively converts a motion to dismiss into a summary judgment motion and relies on a much more developed record. Furthermore, if the Defendants find authorities outside of this Circuit more persuasive on this point then they should consider a plethora of cases that decisively relegate fair use to later stages of the litigation. *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009)("[I]n light of a court's narrow inquiry at this stage and limited access to all potentially relevant and material facts needed to undertake the analysis, courts rarely analyze fair use on a 12(b)(6) motion." See also *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 (D.D.C. 2015)(adjudicating that despite of *Brownmark* a fair use defense involves a fact-intensive inquiry). *Vil v. Poteau*, No. 11-CV-11622-DJC, 2013 WL 3878741, at *4 (D. Mass. July 26, 2013)("The fact-sensitive nature of the fair use defense has caused courts to be reluctant to allow it as grounds for dismissal at this early juncture in the litigation"); *Sony BMG Music Entm't v. Tenenbaum,* 672 F. Supp. 2d 217, 220 (D. Mass.

2009)("fair use is more appropriately resolved on a factual record as most courts have done");
*BMG Music v. Gonzalez,* 430 F.3d 888 (7th Cir.2005) (fair use decided on appeal from summary
judgment).

## B.  FAIR USE HAS TO BE EVIDENT FROM SIDE-BY-SIDE ANALYSIS

Even in cases that have found a fair use defense is ripe for consideration at a motion to
dismiss stage, some courts have recognized that only a parody can be evident on the face of the
complaint without delving into a fact-specific inquiry.  *Katz v. Chevaldina*, 900 F. Supp. 2d
1314, 1316–17 (S.D. Fla. 2012) (relying on *Brownmark* to emphasize that a fair use defense in
which the infringing work is parody is more likely to be ripe for resolution upon a motion to
dismiss than other fair uses).   The present cases do not feature a parody.   The Defendants have
not claimed that any of the infringing uses are parodies for the purposes of the fair use defense.
To the contrary, the Defendants uniformly insist that they are merely reporting the news.   Since
news reporting and commentary is not one of the categories that lends itself easily to recognizing
and evaluating fair use on the face of the complaint, the Court should deny these motions to
dismiss as premature.

Even if the Court considers a pre-answer fair use defense in a non-parody case, the
Defendants can only rely on evidence on the face of the complaint, by comparing the work side-
by-side.  The Defendants bear the burden of proving that the use was fair.  That burden has not
and cannot be met so early in the litigation process.  In considering the fair use factors the Court
must not only weigh the totality of the evidence evident from a side-by-side comparison, but
consider the potential significance and scope of evidence not yet part of the record.  In other
words, when evaluating the four fair use factors the Court should consider whether any
discovery, or even an answer would inform or aid in the fair use analysis.  Consequently, if

evidence from a side-by-side comparison is insufficient or does not show that the use was fair then the motion is premature and should be denied.

## II.    FAIR USE DEFENSE LACKS MERIT

If the Court does believe that the evidence based on a side-by-side comparison is sufficient to evaluate the fair use factors, the Defendants fare no better.  In 17 U.S.C. §107 Congress has provided four nonexclusive factors that inform whether a given use is fair: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

## A.    Character and Purpose of the Use

In the Second Circuit, the prevailing view is that the first factor is the most salient one and if the use is transformative, then a finding of fair use is likely.  In the wake of *Cariou v. Prince*, 714 F.3d at 705 the Courts inquire as to whether "the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.' *BWP Media USA, Inc. v. Gossip Cop Media*, LLC, 87 F. Supp. 3d 505.  Often called 'the heart of the inquiry of fair use', if the Defendant fails to establish transformative use, other factors become more relevant.

Crucially, the first factor analysis asks to what extent is the use transformative in that it does something more than repackage or republish the original copyrighted work. *Authors Guild,*

*Inc. v. HathiTrust,* 755 F.3d 87, 96 (2d Cir. 2014).  Courts have found that use of the original

work, "in furtherance of the creation of a distinct visual aesthetic and overall mood" for the

audience, is transformative. *TCA Television Corp. v. McCollum,* 151 F. Supp. 3d 419, 435

(S.D.N.Y. 2015).  Specifically, if "the secondary use adds value to the original—if

[copyrightable expression in the original work] is used as raw material, transformed in the

creation of new information, new aesthetics, new insights and understandings—this is the very

type of activity that the fair use doctrine intends to protect for the enrichment of society." *N.*

*Jersey Media Grp. Inc. v. Pirro,* 74 F. Supp. 3d 605, 614–15 (S.D.N.Y. 2015)(quoting *Castle*

*Rock,* 150 F.3d at 142)(internal quotation marks and citations omitted).   In that case, the Court

did not find Fox News' use of a photograph depicting the events of 9/11 with alterations and

commentary to be transformative enough. *Id. at* 617. The Court noted that "even if an infringer's

purpose was distinct from that of the plaintiff's, such purpose, by itself, does not necessarily

create new aesthetics or a new work that alters the original work with new expression, meaning,

or message" *Id.*   That decision also relied on *Monge v. Maya Magazines, Inc.,* 688 F.3d 1164,

1173, 1176 (9th Cir.2012) (concluding that a magazine's publication of copyrighted photographs

as an exposé "sprinkled with written commentary" was "at best minimally transformative"). *N.*

*Jersey Media* interprets the *Monge* decision to mean that a publication could not "simply take

fair use refuge under the umbrella of news reporting." *N. Jersey Media Grp. Inc. v. Pirro,* 74 F.

Supp. 3d, at 617.

    If the use is not transformative or is minimally so, the commercialism of Defendants' use

becomes more relevant.  Yet the issue is not whether the sole motive of the use is monetary gain

but whether the user stands to profit from exploitation of the copyrighted material without paying

a proper licensing fee. *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 562, 105

S.Ct. 2218, 85 L.Ed.2d 588 (1985) ("The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use.").   The use across all three Defendants is clearly commercial, because it is intended to attract viewers, increase web-traffic and social media footprint and subsequently earn revenue through advertising.   None of the Defendants can or does challenge the fact that it is a for-profit company.   Therefore, if the Court agrees that the Defendants' respective uses are minimally or not at all transformative, it should weigh evidence of commercialism more heavily against the finding of fair us.


     1.   First Factor Does Not Favor a Finding of Transformative Use.

ABC concedes having aired several clips of from the video.   They were minimally edited and accompanied by brief comments from the hosts of the show.   The comments consist of an introduction to the video, which just describes what the viewer is about to see.   After the video clips play, the hosts briefly exchange a few words about themselves.   Just watching the Good Morning American segment makes it clear that this is not type of case where looking at the infringement side by side with the original will be enough to make a determination that the use was fair.   No new meaning, message or understanding is added to the original.   Society, on the one hand, was not enriched nor were science or the arts enhanced as a result of whatever scant comments the hosts added to the video clips.   ABC takes cannot take refuge under the umbrella of news reporting or commentary.   A simple glance at the GMA segment rules out that the use is transformative.

NBC aired several clips from the video, once during the 8a.m hour and once during the 9 a.m. hour.   Similar to ABC's use, the hosts merely introduced the video and then had a casual exchange of platitudes and person responses.   The volume of the comments was greater at NBC

simply because it aired the segment twice and the 8a.m. hosts differ from the 9a.m. hosts (for the exception of Al Roker).     The comments were superficial and brief.   They merely described what was happening and then made personal comments.   In the later segment, the hosts briefly touch on the motivation of the couple behind the video.  Host Tameron Hall asks if the purpose of the video was educational.  This cannot be imputed to NBC, however.  It does not add a new understanding, new meaning or a message to the original video.  The hosts' comments merely describe what the video is and then speculate about the motivation behind its posting.   This use is not transformative, but similar to ABC's use, it does not enhance our society nor contribute to the progress in science or arts.    It follows that NBC's use is not transformative.

Finally, COED's use of a screenshot from the video is not transformative.  COED took a screenshot of the video as is, did not alter it in any way.  The additional text adds little in terms of a new meaning, message or understanding.   The article is very brief.  It simply describes what the video contains and then quickly disparages the author.   It does not enrich our society or promote the progress in science or the useful arts.   Curiously, unlike co-Defendants, COED's article acknowledges that the video is not appropriate for showing and links to the video instead. This use of the screenshot is not transformative in accordance with Second Circuit precedent. COED relies on cases outside of this Circuit to support the theory that an article accompanying an image is transformative.   The Second Circuit, however, has clearly spoken about what constitutes transformative use and it decisively excludes COED's use of a screenshot from the video.

Given that none of the Defendants has or can show transformative use beyond the very minimal, the commercial nature of their respective enterprises becomes more relevant.  All three are for-profit companies dependent on viewers, clicks, shares, likes, reposts and other modes of

consumer approbation in the determination of their respective revenue. The commercial nature of the Defendants mitigates heavily against the finding of fair use.

## B. Second Factor is Neutral.

In analyzing the nature of the copyrighted work the Courts consider " '(1) whether the work is expressive or creative, ... with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower.' " *Cariou v. Prince,* 714 F.3d 709–10 (quoting *Blanch,* 467 F.3d at 256)(quotation and citation omitted).

At first glance it appears that the video is informational and published, therefore deserving lesser protection. But on closer examination, the video is not purely factual or informational nor is it necessarily published for the purposes of the fair use analysis. First, the video narrates and asks the audience to witness the birth of a child. According the ABC's own rendition the video includes personal conversations with the videographer's partner, words of comfort and encouragement, the welcoming of the baby by the father, praying and final conversations with the newly expanded family. Second, while technically the video was published on Facebook – it was done so accidentally, as the Plaintiff intimated in subsequent interviews and online comments. As COED's article notes, in the video the Plaintiff invites the viewers to his barbeque later. This is consistent with the Plaintiff's position that he thought that he was speaking a few, select friends and family. The intent was to record and share the experience with his Facebook friends only, but due a technical error or mistake the video was live streamed on Facebook for all to see. Without the intentionality behind the publication, it is

10

unfair to penalize the accidental publishing of the video by then affording it less protection. It would mean that the Plaintiff got punished twice, once for the accidental publication which violated his and his partner's privacy and then again by the shielded fair use of that publication. The Copyright Act rightfully protects unpublished works, and the unintentional, unknowing publication of the work should receive the same protection from fair use. Consequently, the second factor is either neutral or should mitigate against the finding fair us.

### C. Third Factor Does Not Favor a Finding of Fair Use.

In examining the third factor courts consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Furthermore, the courts analyze "whether the quantity and value of the materials used[ ] are reasonable in relation to the purpose of the copying." *Blanch,* 467 F.3d at 257.

ABC relies on cases in this circuit and outside of this district that have held a small proportion of the original work is fair use.[1]   The cases ABC cites are equally unavailing. While all cite numbers that involve a small percentage of the original work, most were decided on a summary judgment and involved portions of feature films. Some that were not summary judgments involved preliminary injunctions where only the likelihood of fair use was found.

NBC claims the several clips it used "did not come from the heart of the video". The clips it uses tell the story of the video, a narrative of labor. Though it a large percentage of the video, the narrative effectively relates the content of the video.

---

[1] Plaintiff cannot address one of the cases ABC cites due to a wrong citation. Video-Cinema Films, Inc. v. Cable News Network, Inc., 2003 WL 1701904 at *7 & n. 19 does not reach page 7 nor have note 19.

COED argues more broadly that its use is *de minimis*. This argument is again repeated in the analysis of the third factor. While using less footage than ABC and NBC, COED still infringed on the rights of the copyright owner. According to COED's argument if the image depicted on its website was the image of the baby's birth, the use would still be *de minimis* even if it completely usurps the original. A motion to dismiss screenshots or screengrabs as separate works for the purposes of the calculating statutory damages of a video was recently denied. *Devocean Jewelry LLC v. Associated Newspapers Ltd.*, No. 16-CV-2150 (KMW), 2016 WL 6135662, at *2 (S.D.N.Y. Oct. 19, 2016). Though addressing slightly different concerns, courts in this Circuit have recognized that screengrabs or screenshots are capable of infringement and are not *de minimis*. In allowing each individual screengrab or screenshot to come with its own statutory award, the courts have consistently viewed screengrabs and screenshots as capable of infringement.

Finally, since the Defendants' use was minimally or not at all transformative, the qualitative analysis should reflect that. ABC relies on transformative use to ground the substantial, sequential amount of the video it broadcasted. It heavily depends on the notion that enough of the original must be reproduced to accomplish its transformative end. But if the use is found lacking a transformative aspect or minimally so, then ABC's argument fails. The fact is that ABC and NBC took the narrative, most significant parts of the video to tell a story. Even if it is not completely in the sequence of the video, their rendition still tells the same story. Therefore, the third factor mitigates against a finding of fair use.

### D. Fourth Factor Does Not Favor a Finding of Fair Use.

The Second Circuit has elaborated that "[t]he focus here is on whether defendants are offering a market substitute for the original.... [O]ur concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 481–82 (2d Cir.2004). *See BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 509. It is not necessary to be in the business of licensing the work to satisfy the fourth factor.

While COED's use is slightly less likely to usurp the market of the original video, ABC's and NBC's broadcasts effectively usurped the original work. It is conceivable that someone watching these broadcasts would be satisfied and have no need for to view the original video. Therefore, the fourth and final factor mitigates against a finding of fair use.

## III. THE COMPLAINT SUFFICIENTLY PLEADS A DMCA CLAIM AGAINST COED

The Courts strongly disfavor and rarely grant motions to dismiss pursuant to FRCP Rule 12(b)(6). 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1357, at 598. In determining whether the Complaint adequately pled a cause of action, the Court must presume the all allegations contained therein are true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). In fact, the Court must construe the motion to dismiss in a light most favorable to the non-moving party. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 732 (2d Cir. 2013). Furthermore, the Court may refer to judicial experience and common sense when deciding whether a set of alleged facts constitute a plausible claim *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009). "The court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the

complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir.2010) (internal quotation and citation omitted).

In order to survive a motion to dismiss pursuant to FRCP Rule 12 (b)(6), the plaintiff must have plead a set of factual allegations that, if true, plausibly state a valid claim. *Ashcroft v. Iqbal,* 556 U.S. 678 and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Even after the tightening of the pleading standard in *Twombly* and *Iqbal,* the Supreme Court recognizes that the question is not whether the claim will eventually prevail, "but whether his complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 131 S. Ct. 1280, 1296 (2011), citing *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 514 (2002). The Court further clarifies that "a complaint need not pin plaintiff's claim for relief to a precise legal theory," but rather requires only a plausible "short and plain" statement of the plaintiff's claim. *Id.* To be certain, FRCP 8(a) (2) does not require an exposition of the legal argument. Nor does *Iqbal* and *Twombly* usher in a heightened pleading standard, requiring specific factual allegations.

The Second Circuit, in particular, has made it clear that *Iqbal* and *Twombly* do not stand for the proposition that the Plaintiff may no longer plead "upon information and belief". This is especially true "[1]where the facts are peculiarly within the possession and control of the defendant, or [2] where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 2010 WL 1729107, *8 (2d Cir.). In other words, the pleading may properly rely on facts to which only the defendant has access and on beliefs based on those facts. In *David Young-Wolff v. McGraw Hill Companies*, 2014 WL 349711 (Jan. 14, 2014), the Hon. Judge Wood has specified that "[t]his standard 'does not impose a *probability* requirement at the pleading stage; it simply calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id* at *2 (citing *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.,* 709 F.3d 129, 135 (2d Cir.2013) (quoting *Twombly,* 550 U.S. at 556)) (internal citations omitted).

### A. Complaint Sets Forth a Plausible Set of Facts

In order to properly plead a 17 U.S.C. §1202(b) claim, the Plaintiff must allege that 1) the Defendant intentionally removed or altered the existing CMI, 2) without the authority of the copyright owner or the law, and 3) that the Defendant knew or should have known that that it will induce, enable, facilitate, or conceal an infringement. *Agence France Presse v. Morel*, 769 F.Supp.2d 295, 305 (S.D.N.Y. Jan. 14 2011). To be sure, a properly pled complaint must include a scienter. However, the Plaintiff's pleadings do not have to be detailed and factually specific as to the scienter requirement beyond a "plain and short statement". "Courts have applied this statute in a straightforward manner such that Plaintiffs here need only allege (1) the existence of CMI…; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *BanxCorp. v Costco Wholesale Corporation*, 723 F.Supp.2d 596, 609 (S.D.N.Y. July 2010).

The Complaint adequately sets forth factual allegations that the COED, without knowledge or consent of Plaintiff (Complaint 24) cropped and altered the CMI on the screengrab (Complaint 22) and that it was done intentionally and knowingly. (Complaint 25). Beyond a "plain and short statement", in *BanxCorp* the Court held that if an actual example of the infringement is proffered as it is in Exhibit A & B, then the requisite scienter has been sufficiently pled. *BanxCorp* at 610. Even *Morel* cites *BanxCorp*, 723 F.Supp.2d at 610 ("[p]roviding an actual example of the allegedly infringing ad is obviously more than a conclusory allegation") to stand for the proposition that attaching exhibits of infringement is

15

sufficient to survive a motion to dismiss.   COED has called Plaintiff's factual allegation

conclusory, but the Second Circuit recognizes it as a well-pled requisite scienter.

Here, the Complaint adequately pleads the scienter by attaching an actual example of the

infringing activity.  *See* Exhibit A & B.

**B.  The Defendant's Argument that Intent and Knowledge Have Not Been Established Are Premature**

Even if the Court determines that the scienter requirement has not been fully fleshed out,

the Courts in *Morel* and *BanxCorp* have ruled that these issues are best addressed at later stages

of the litigation. The Courts have held that "at summary judgment, Defendants will have an

opportunity to present evidence that ... the CMI...was sufficiently removed to demonstrate that

Defendants lacked the intent required to show a violation of the DMCA.") *BanxCorp* at 601.

*BanxCorp* further established that in the Second Circuit the Court has resolved that scienter

issues are more appropriately determined by a trier of fact.

In *Morel*, the Court similarly relies on *In re DDAVP Direct Purchaser Antitrust

Litig.,*585 F.3d 677, 693 (2d Cir.2009) (courts must be "lenient in allowing scienter issues ... to

survive motions to dismiss") in reviewing whether a scienter requirement is properly pled. In

fact, *In re DDAVP* the District Court's grant of a motion to dismiss was reversed because

"scienter issues ... are appropriate for resolution by the trier of fact"….," despite applying the

heightened pleading standard of FRCP Rule 9(b) (internal quotation marks omitted).  Even in

cases involving a heightened pleading standard, which this is not, the Second Circuit has

resolved that scienter issue are premature for a motion to dismiss.   The Defendant here insists

that the scienter requirement has not been sufficiently pled.  The Plaintiff has already shown that

attaching the exhibit of the actual infringement in conjunction with a plain and short statement as

to "knowing and intent" is sufficient, but even if the Court finds it lacking –the Second Circuit has relegated issues pertaining to the scienter requirement to the trier of fact, more appropriate at summary judgment and deserving of a liberal inference in the Plaintiff's favor. The Defendant's motion to dismiss as to the insufficiency of the requisite scienter under the DMCA claim must be denied as both premature and meritless.

## C. Defendant's Argument that the Complaint Makes Conclusory Assertions Regarding COED's Intent and Knowledge Are Meritless

### 1. Defendant's Argument Regarding the Sufficiency of Plaintiff's Complaint Has Been Rejected in the Second Circuit

The Defendant cites several cases intended to support its position that Plaintiff's pleading of the scienter requirement is not plausible on its face. Unfortunately, none of the cases cited says what the Defendant would like it to say. COED cites *Chevrestt v. Am. Media, Inc.*, No. 16 CIV. 5557, 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016) without citing *Devocean Jewelry LLC v. Associated Newspapers Ltd.*, a case that was decided not only after *Chevrestt* but upon submission of the *Chevrestt* decision as a supplemental authority. Hon. Kimba Wood held that the Complaint was pled sufficiently" enough by alleging that Defendant removed the CMI from the Screen Grabs and by attaching as an exhibit to the Complaint a copy of the article in which the altered screen grabs appeared." *Id.* at *2.

The Defendant relies on several District Court decisions outside of the Second Circuit in an attempt to show that requisite scienter cannot be established by mere allegations alone. As discussed above, the Second Circuit has held that attaching an example of the alleged infringement satisfies the plausible pleading standard. In *BanxCorp*, the Court found that having the actual exhibit before them goes well beyond a conclusory allegation. Moreover, all the cases

the Defendant cites on this point, beyond having no precedential value, address scienter

requirements at a more advanced stage of litigation, namely at summary judgment. Here, the

Defendant is attempting to turn a motion to dismiss into a motion for summary judgment.

Having properly pled the requisite scienter pursuant to Section 1202(b), the DMCA claim

is legally sufficient and the motion to dismiss should be denied.

### 2. The Defendant's Argument that It Credited the Author Are Groundless

The Defendant argues that since infringing article (Complaint 10, 11 and Ex. A & B)

mentions the Plaintiff and his Facebook page, includes a link to the Facebook then it cannot

possibly "induce, enable, facilitate or conceal an infringement." The Defendant mistakenly

believes that merely identifying the owner of the copyright is sufficient to make the claim

implausible. What the Defendant misconstrues as "good faith", like mentioning the owner of the

copyright, very plausibly constitutes intentional and knowing behavior. In fact, the Defendant

removed Plaintiff's CMI that would immediately notify the viewer as to the rightful copyright

owner. The Defendant was aware of the fact that CMI was removed and altered, as well as being

aware that this would induce, enable and facilitate infringement. The subsequent measures the

Defendant took in identifying the rightful owner of the copyright were not preventative, but

rather remedial in nature. References to the copyright owner amount to nothing more than a

small measure of mitigation. Even if "good faith" was a safe harbor, the Defendant cannot

claim it in this instance. Furthermore, this argument, again, deals with issues that should

determined by the trier of fact and are premature at this stage in the litigation. To be certain, the

Plaintiff has plead a plausible set of factual allegations that the Defendant intentionally and

knowingly removed and altered the CMI, without consent. Therefore, the DMCA claim is

legally sufficient and the motion to dismiss should be denied.

It is not surprising that the Defendant cites no authorities supporting the notion that a supposed showing that crediting or merely identifying the proper copyright owner somehow negates the scienter requirement of §1202 (b).   To the contrary, the DMCA scienter requirement in §1202(b) is not one of actual knowing, but one of constructive knowing.   Critically, it requires that the removal or altering of CMI be done "knowing, or, … having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement."   This relaxed scienter requirement is in contrast with the actual knowledge required in §§1202(b)(2) and (3).   In these latter subsections, the DMCA requires actual knowledge, a stricter requisite scienter demanding a more specific pleading.   For our purposes, however, only constrictive knowledge applicable to §1202(b) is relevant.   It is plausible that the Defendant's remedial measures that attempt to mitigate the potential for infringement, namely, links, mentions and copyright notations pointing to the rightful owner, amount to at least constructive knowledge.   The Defendant should have known and knew that removing and altering CMI would induce, enable, facilitate and conceal infringement.   As a result, he took remedial measures in order to mitigate the infringement.   Far from acting having no intent, the Defendant's requisite scienter has been sufficiently pled and the DMCA §1202 (b) claim is plausible on its face.   The Defendant's motion to dismiss the DMCA claim must be denied.

## CONCLUSION

In light of the reasons stated above, we respectfully ask that all three Defendants' Motions to Dismiss be denied.


Dated: January 20, 2017                              Respectfully Submitted,
       Valley Stream


                                        /s/Yekaterina Tsyvkin
                                        Yekaterina Tsyvkin

Richard P. Liebowitz
Liebowitz Law Firm PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY  11580

*Counsel for Plaintiff Kanongataa*