**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KALI KANONGATAA,                              :   ECF Case
                      Plaintiff,              :
                                              :   Case No. 1:16-cv-07382 (LAK)
            -against-                         :
                                              :
AMERICAN BROADCASTING COMPANIES,              :
INC. AND YAHOO! INC.,                         :
                                              :
                      Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KALI KANONGATAA,                              :   ECF Case
                      Plaintiff,              :
                                              :   Case No. 1:16-cv-07383 (LAK)
            -against-                         :
                                              :
NBCUNIVERSAL MEDIA, LLC,                      :
                                              :
                      Defendant.              :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KALI KANONGATAA,                              :   ECF Case
                      Plaintiff,              :
                                              :   Case No. 1:16-cv-07472 (LAK)
            -against-                         :
                                              :
                                              :
COED MEDIA GROUP, LLC,                        :
                                              :
                      Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTIONS TO DISMISS OF AMERICAN BROADCASTING COMPANIES, INC., YAHOO! INC., COED MEDIA GROUP LLC, AND NBCUNIVERSAL MEDIA, LLC**

Defendants American Broadcasting Companies, Inc., Yahoo! Inc. (together, "ABC/Yahoo"), NBCUniversal Media, LLC ("NBC"), and COED Media Group, LLC ("CMG") (collectively, "Defendants") respectfully submit this Joint Reply Memorandum of Law in further support of their respective Motions to Dismiss.

The ABC/Yahoo and NBC motions raise only the issue of fair use, and thus those cases may be dismissed on that ground alone.  The CMG motion raises fair use, *de minimis* use, and the sufficiency of Plaintiff's DMCA claim that is directed only against it.  This joint reply first jointly addresses the issue of fair use, and then concludes with CMG's response addressing *de minimis* use and the DMCA claim.

**I.      THE ISSUE OF FAIR USE IS RIPE FOR DETERMINATION NOW**

Much of Plaintiff's Opposition to Defendants' Motions to Dismiss ("Opp."), Jan. 20, 2017, Dkt. 26, argues that a defense of "fair use is premature at [the] motion to dismiss stage." Opp. at 3.  But his arguments in support of this contention actually make clear why, in this case, fair use should be decided now.

Plaintiff concedes that the law in this Circuit is that "in certain circumstances, *fair use may be established at the motion-to-dismiss stage* simply by placing the copyrighted work and the purportedly infringing work side-by-side and comparing their characteristics."  Opp. at 3 (emphasis added) (citing *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013)); *see also TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016 ) ("[T]his court has acknowledged the possibility of fair use being so clearly established by a complaint as to support a dismissal of a copyright infringement claim.").  Here, Defendants' motions were based entirely on the face of the amended Complaint and its incorporated exhibits, which included Plaintiff's allegedly copyrighted work and all of Defendants' purportedly infringing works.

1

Defendants' arguments are based entirely on a side-by-side comparison of those works. While Plaintiff argues generically that discovery is necessary, his Opposition never points to a single fact or piece of evidence potentially available in discovery that he contends could alter, or even inform, the fair use analysis here. Rather, Plaintiff's arguments likewise rely entirely on a side-by-side comparison of the works at issue.[1] The fair use question is therefore ripe for determination now.

## II. DEFENDANTS' USES WERE FAIR

### 1. The Character and Purpose of Defendants' Use Favors a Finding of Fair Use

Plaintiff concedes that the first factor—the character and purpose of the use—"is the most salient one." Opp. at 6. He also does not dispute that Defendants used images from his live birth video (the "Video") as the basis for news reporting and commentary, which are both uses referenced explicitly in the statute. *See* 17 U.S.C. § 107 (2016); *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991) ("[T]here is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in section 107."). Plaintiff further acknowledges that "if the use is transformative, then a finding of fair use is likely," but he asserts that Defendants' uses were not transformative. Opp. at 6. Plaintiff's arguments misconstrue what the term "transformative" means in this context.

In effect, Plaintiff seems to argue that because the respective video clips or screengrabs used by each defendant were copied from the underlying Video, there is "[n]o new meaning, message, or understanding [] added to the original." Opp. at 8. But that is plainly not so,

---

[1] Plaintiff contends that "some courts have recognized that only a parody can be evident on the face of the complaint." Opp. at 5. No case supports that proposition, and indeed the only case upon which Plaintiff relies, from Florida, merely states that parody is a kind of use more likely to be resolvable on a motion to dismiss based on fair use. *Id.* (citing *Katz v. Chevaldina*, 900 F. Supp. 2d 1314, 1316-17 (S.D. Fla. 2012)).

2

because by that logic the use of video clips or screengrabs could never be transformative unless the underlying video was itself physically manipulated.

Rather, the relevant point is that, by his own admission, the "purpose and character" of Plaintiff's use was to stream a video to family and friends so that they could fully experience a specific event. Opp. at 1. By contrast, the "purpose and character" of Defendants' uses was to report about, and comment on, the controversial existence of a live childbirth video on Facebook, which had social significance well beyond the fact of the birth depicted in the Video. To achieve that purpose, Defendants used tiny fragments of the Video as part of the "raw material" for their reports, and added headlines, news reporting, and comments to contextualize it. *See Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 142 (2d Cir. 1998). The result provided the general public with "new information" and "new insights and understandings" quite different from what a friend or family member who watched the Video might have learned. *Id*. Defendants' uses thus provided a "social benefit" beyond the original, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 114 S. Ct. 1164, 1171 (1994), and is exactly the kind of transformative use that is considered fair, *see, e.g.*, *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) ("the case for a fair use defense would be extremely strong" were a "TV news program" to use visual works to comment upon their significance); *Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000) (display of copyrighted photographs was fair use where "the pictures were the story."). Indeed, Plaintiff's own characterization of some of the elements of Defendants' news reports further demonstrate why they are transformative. *See, e.g.*, Opp. at 8 (the clips were "accompanied by brief comments from the hosts of the [ABC] show"); *id.* at 9 ("the [NBC] hosts briefly touch on the motivation of the

couple behind the video"); *id.* ("[NBC] [h]ost Tameron [sic] Hall asks if the purpose of the video was educational"); *id.* (CMG's commentary purportedly "disparages the author").

Plaintiff does not even attempt to explain how this case is distinguishable from the roughly dozen others in this jurisdiction that have found similar news-related uses of brief clips or excerpts from much longer videos to be transformative. *See* Mem. of Law in Supp. of Motion to Dismiss ("ABC/Yahoo Mem.") at 16-17, No. 1:16-cv-07382-LAK, Dkt. 16 (citing cases). Instead, Plaintiff relies on two cases that did not present analogous scenarios at all. In *North Jersey Media Group Inc. v. Pirro*, 74 F. Supp. 3d 605 (S.D.N.Y. 2015), a news reporter took an image containing another journalist's 9/11 photograph and simply re-posted almost all of it to the reporter's own Facebook page, with the hashtag "#neverforget." The court found there was no news, commentary, or other purpose in the second posting that was meaningfully different from the original news use, and so the re-posting of almost an entire work was not sufficiently transformative to make it fair.

And in *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012), a magazine used three entire, unpublished photographs of a couple's wedding for essentially the same purpose the pictures had originally been taken—to document the underlying event of the wedding. In concluding that use was not transformative, the Ninth Circuit distinguished it from the scenario presented in *Núñez*, where "the pictures were the story" because the existence of the provocative pictures was what was newsworthy and controversial. *Id.* at 1175-76. The nature of Defendants' uses here is indistinguishable from *Núñez*, and Plaintiff does not attempt to argue otherwise.

Finally, the parties agree that if a use is sufficiently transformative, then the fact that the Defendants are commercial entities is of little significance. Opp. at 7-8. The first factor therefore favors these Defendants.

## 2. The Nature of the Copyrighted Work Weighs in Favor of Fair Use

Plaintiff argues that the second factor is "neutral" because he contends the underlying Video is not "purely factual or informational" and was unpublished. Opp. at 10. Neither argument has merit.

First, Plaintiff says the Video was taken to document the birth of his child so that family and friends who were not present could witness what was actually happening in the delivery room. Opp. at 1, 10. The resulting Video is plainly factual or informational, and the fact that Plaintiff sometimes narrated those events to help inform his intended audience only underscores that conclusion. Opp. at 10; *see New Era Publ'ns Int'l, ApS v. Carpl Publ'g Grp.*, 904 F.2d 152, 157 (2d Cir. 1990) (factual works are those that are "primarily informational rather than creative" (citations omitted)). This factor thus weighs in favor of fair use.

Second, Plaintiff concedes that he broadcast the Video on his Facebook page. However, he claims that was unintentional, and argues that the "unintentional, unknowing publication" of a work to a wider audience than was intended should be discounted for purposes of a fair use analysis. Opp. at 10-11. However, the Second Circuit recently rejected a similar argument in *Swatch Group Management Services Ltd v. Bloomberg L.P.*, where it held that a conference call intended only for specific invitees was nonetheless published for purposes of the fair use doctrine when an audio recording of it was surreptitiously made and disseminated by a reporter. 756 F.3d 73, 87-89 (2d Cir. 2014). The Court explained that "publication" for purposes of a fair use analysis should generally be construed *more broadly* than for other purposes within the Copyright Act—and not, as Plaintiff contends, more stringently.[2] *Id*. at 88-89.

---

[2] While it makes no difference for purposes of these motions, it bears mention that Plaintiff's argument on this question is curious in light of the fact that his Facebook page referenced by the Complaint makes clear that he quickly became aware that the Video was publicly available, but instead of removing it, he welcomed and encouraged members of the public to view the entire Video. *See* Decl. of N. Siegel at Ex. B (May 16, 2016 entry at

5

### 3. The Amount and Substantiality of the Use Weighs in Favor of Fair Use

With respect to the third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3), Plaintiff does not point to a single case that has ever found a news use of a fractional video clip or screengrab to be unfair. Rather, he tries to distinguish the numerous cases to the contrary cited by Defendants, *see* ABC/Yahoo Mem. at 15-16, primarily on the grounds that they were decided on summary judgment. Opp. at 11. Plaintiff never explains, however, what facts might be uncovered here that could somehow distinguish these uses—involving 30 seconds (NBC), 22 seconds (ABC/Yahoo), and a single frame (CMG)—from all the ones Defendants cited. Plaintiff also points out that some of those cases involved feature films, Opp. at 11, but, if anything, feature films would be *less* likely to support a finding of fair use because they are creative, not factual. Even so, the uses in all the cited cases were deemed fair.

Finally, Plaintiff briefly and with little explanation alleges that defendants ABC and NBC took the "most significant parts" of the Video. Plaintiff does not identify what parts of the Video he deems to be most significant, and a side-by-side comparison of the Video with Defendants' allegedly infringing works makes clear that the experience of watching the two are not comparable. Consequently, this factor also weighs in favor of fair use.

### 4. The Effect on the Market for the Video Weighs in Favor of Fair Use

Finally, the fourth factor, "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), also weighs in favor of fair use. Plaintiff concedes that he was never in the business of licensing the Video. He also acknowledges that the primary inquiry is "whether the secondary use usurps the market of the original work." *NXIVM Corp. v.*

---

7:30 a.m.), No. 1:16-cv-07382-LAK, Dkt. 17-2 ("Again, I didn't mean to make it public, but God works in mysterious ways.").

*Ross Inst.*, 364 F.3d 471, 481-82 (2d Cir. 2004).  A secondary use "usurps" the market "where the infringer's target audience and the nature of the infringing content is the same as the original."  *Cariou*, 714 F.3d at 709; *see also Amsinck v. Columbia Pictures Indus., Inc.*, 862 F. Supp. 1044, 1049 (S.D.N.Y. 1994) (fourth factor considers whether the allegedly infringing work "can be used as a substitute for the plaintiff's original work.").

Plaintiff's own Opposition resolves the fourth factor in Defendants' favor.  He affirmatively contends that he never intended there to be a "market" for the Video at all, and that its "target audience" was merely friends and family.  Opp. at 1, 10.  There is no plausible basis for Plaintiff's allegation that NBC or ABC's news reports targeted at the general public "usurped" that "market," and Plaintiff essentially concedes that CMG's use does not.  *See* Opp. at 13.  Plaintiff also makes the curious argument that "[i]t is conceivable that someone watching [ABC and NBC's] broadcasts would be satisfied and have no need for to [sic] view the original video"—even though he contends that he did not want anyone else to view the original Video.  Opp. at 13.  In any event, a side-by-side comparison of the Video with the ABC and NBC news reports (and the CMG screengrab) underscores the sheer implausibility of that claim.  Those reports are not a substitute for anyone who might want to see the totality of the actual birth experience, filmed from the father's perspective.

### III.  PLAINTIFF FAILS TO REFUTE CMG'S *DE MINIMIS* USE ARGUMENT OR TO ESTABLISH A PLAUSIBLY PLEADED SECTION 1202 CLAIM

#### 1.  Plaintiff's Arguments Concerning *De Minimis* Use Are Misleading

Plaintiff's reliance on *Devocean Jewelry LLC v. Associated Newspapers Ltd.*, No. 16-CV-2150(KMW), 2016 WL 6135662 (S.D.N.Y. Oct. 20, 2016), is misplaced and, in fact, misrepresents the significance of that case's holding.  There, the plaintiff sued for unauthorized posting of its video and six screengrabs on the defendants' website.  *Id*. at *1.  The plaintiff had

7

obtained a registration for the video as well as 22 separate screengrabs from the video (including those posted online). *Id*. The defendant moved to dismiss because the screenshots, as part of the video, did not entitle the plaintiff "to recover statutory damages for each Screen Grab as well as the Video." *Id*. at *2. While it agreed that the plaintiff could not recover multiple statutory damages awards, the court held that defendant's argument for dismissal was premature, as it did not "go to the sufficiency of Plaintiff's allegations of infringement with respect to the Screen Grabs, but rather goes to the calculation of damages." *Id*. The motion to dismiss in *Devocean* was not based on fair use, nor was *de minimis* use ever raised. The court's finding that the plaintiff's allegations that the screenshots were infringed were sufficient for purposes of that plaintiff's complaint says nothing about the sufficiency of Plaintiff's Complaint here in the context of fair and *de minimis* use. Plaintiff cites no authority to support his claim that "courts in this Circuit have recognized that screengrabs or screenshots . . . are not *de minimis*," or for the proposition that "each individual screengrab or screenshot" comes "with its own statutory award." (*See* Opp. at 12.) In fact, *Devocean* plainly contradicts Plaintiff's latter statement.[3]

### 2. Plaintiff's Attempts to Save His § 1202 Claim are Misguided

*First*, Plaintiff fails to address two arguments raised in CMG's opening brief, each of which provides an independent basis for dismissal of his § 1202 claim: (1) CMG's fair use of a screengrab cannot give rise to a § 1202 claim as a matter of law; and (2) Plaintiff fails to allege the existence of copyright management information ("CMI") on the Video. *See* Mem. of Law in Supp. of Mot. to Dismiss ("CMG Mem.") at 14, 16-17, No. 16-cv-07472-LAK, Dkt. 17.

---

[3] Further, Plaintiff mischaracterizes CMG's position, stating that even "if the image depicted on its website was the image of the baby's birth, the use would still be *de minimis* if it completely usurps the original." Opp. at 12. Plaintiff appears to be making a theoretical "heart of the work" argument, which is irrelevant here because the baby's birth was concededly not depicted. Also, third, Plaintiff, under factor four, concedes that CMG did not usurp the market for the Video, so it inherently could not have taken the "heart" of the work. These arguments should be given no weight.

8

Plaintiff's silence on these points is telling, and dispositive. *See In re UBS AG Sec. Litig.*, No. 07 CIV. 11225(RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (granting motion to dismiss where opposition brief failed to address argument regarding essential element of claim).

*Second*, Plaintiff believes that attaching "actual examples" of the alleged violation to a complaint transforms a deficiently pleaded § 1202 claim into a plausible one. *See* Opp. at 15-17. This is not the case; yet Plaintiff urges this Court to hold otherwise in light of *BanxCorp* and *Morel*. *See* Opp. at 15-16 (citing *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596 (S.D.N.Y. 2010), and *Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011)). Plaintiff's reliance on these cases for the notion that the "Second Circuit" holds that "attaching an example of the alleged infringement satisfies the plausible pleading standard" misses the mark. Opp. at 17. There is no appellate precedent on this issue, and even in the cited cases, it is not the mere attachment of exhibits, but rather the content of the CMI displayed in those exhibits as compared to the CMI allegedly associated with the original works that gave rise to the inference that the CMI had been altered or removed. *See BanxCorp*, 723 F. Supp. 2d at 610 (plausible to infer CMI was altered where the attached ad contained CMI that differed from the CMI allegedly associated with the original work); *Morel*, 769 F. Supp. 2d at 299-300 (same, where the attached photos did not contain "Morel" and "by photomorel" from original photos). The same inference cannot be drawn from the mere existence of Exhibits A & B here, which cannot plausibly suggest CMG altered the Video's CMI, when Plaintiff has not alleged the Video even contains CMI, and admits CMG "did not alter [the Screenshot] in any way." Opp. at 9.

*Third*, it is not premature to determine at this stage that Plaintiff's conclusory allegations pertaining to CMG's intent are insufficient. *See* Complaint ¶¶ 22-25, No. 1:16-cv-7472, Dkt. 1. For his contention that "courts must be 'lenient in allowing scienter issues . . . to survive motions

9

to dismiss,'" Plaintiff cites to a readily distinguishable case. *See* Opp. at 16 (citing *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (scienter sufficiently pled in light of plaintiff's allegation "that the omissions at issue occurred repeatedly over a period of years" and court's finding of "an intent to deceive" in a related litigation)). Courts do not afford the same "leniency" where, as here, Plaintiff alleges nothing more than naked assertions that CMG acted with intent. *See Mitchell-White v. Nw. Airlines, Inc.*, 446 F. App'x 316, 319 (2d Cir. 2011) (affirming 12(b)(6) dismissal because "[n]aked assertions" that defendants acted intentionally, "without further factual allegations . . . are insufficient to withstand a motion to dismiss"); *Solana v. NYC Dep't of Corr.*, No. 12-CV-3519(ARR), 2012 WL 5466425, at *7 (E.D.N.Y. Nov. 8, 2012) ("[t]hreadbare recitals" that defendants acted "knowingly, intentionally and purposely" do not suffice to state a cause of action).

      As a last ditch effort, Plaintiff attempts to manufacture the requisite intent from CMG's good-faith efforts to credit him for the Video. *See* Opp. at 18-19. However, Plaintiff's theory that CMG only credited him to "mitigate the potential infringement" is baseless, and cannot be reconciled with the fact that CMG specifically invited readers to watch the full video on Facebook via the link provided in CMG's article. *See* CMG Mem. at 16. Indeed, "the presence of copyright information" in the Article "significantly undermines the strength of Plaintiff's allegations regarding [CMG's] intent." *Devocean*, 2016 WL 6135662, at *2.

## **CONCLUSION**

For the foregoing reasons, Defendants ABC, Yahoo, NBC, and CMG respectfully request that their motions be granted and these cases be dismissed in their entirety, with prejudice.

Dated:  January 27, 2017　　　　　　　　Respectfully submitted,


By:    /s/ Nathan E. Siegel

Nathan E. Siegel
Dana R. Green
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1899 L Street NW, Suite 200
Washington, DC 20036
Tel: (202) 508-1100
Fax: (202) 861-9888
nsiegel@lskslaw.com
dgreen@lskslaw.com

*Attorneys for Defendants American Broadcasting Companies, Inc. and Yahoo! Inc.*

By:    /s/ Erik Bierbauer

Erik Bierbauer
NBCUNIVERSAL MEDIA, LLC
30 Rockefeller Plaza, 620-541
New York, NY 10112
Tel: 212-664-4167
Erik.Bierbauer@nbcuni.com
*Attorney for Defendant NBCUniversal Media, LLC*

By:    /s/ Scott J. Sholder

Nancy E. Wolff
Scott J. Sholder
COWAN DEBAETS ABRAHAMS
& SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
nwolff@cdas.com
ssholder@cdas.com
*Attorneys for Defendant COED Media Group, LLC*

## CERTIFICATE OF SERVICE

I, Dana R. Green, hereby certify that on January 27, 2017, I caused true and correct copies of Defendants' Joint Reply Memorandum of Law in Support of the Motions to Dismiss of American Broadcasting Companies, Inc., Yahoo! Inc., COED Media Group LLC, and NBCUniversal Media, LLC to be served via ECF upon:

>Richard Liebowitz
>Liebowitz Law Firm, PLLC
>11 Sunrise Plaza, Suite 305
>Valley Stream, NY 11580
>Tel: (516) 233-1660
>RL@LiebowitzLawFirm.com
>
>Yekaterina Tsyvkin
>Liebowitz Law Firm, PLLC
>11 Sunrise Plaza, Suite 305
>Valley Stream, NY 11580
>Tel: (516) 233-1660
>kt@LiebowitzLawFirm.com
>
>*Attorneys for Plaintiff*

_____
Dana R. Green