IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALI KANONGATAA,<br><br>Plaintiff,<br><br>vs.<br><br>NBCUNIVERSAL MEDIA, LLC<br><br>Defendant. | Civil No. 16-CV-7383 (LAK) |

## DECLARATION OF ERIK BIERBAUER

I, ERIK BIERBAUER, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am Vice President, Litigation, for NBCUniversal Media, LLC ("NBC"), and an attorney for NBC in the above-captioned matter. I submit this Declaration in support of Defendants' Joint Motion for Attorneys' Fees and Sanctions. I am familiar with the facts herein and make this declaration from my personal knowledge.

2. Attached as Exhibit A is a printout from Plaintiff's public Facebook page showing the posting of the "First Live Birth" Video on May 16, 2016 and accompanying comments from Facebook users. As of the signing of this declaration, the Video continues to be available at https://www.facebook.com/PolynesianNonprofit/videos/vb.100001911004128/1073990016008022/?type=2&theater.

3. In the first paragraph of the Preliminary Statement of Plaintiff's opposition to Defendants' motions to dismiss, Plaintiff asserted that "[t]hese cases arise out of an unfortunate

1

circumstance in which the Plaintiff unintentionally and inadvertently broadcasted the birth of his child while thinking that only his close friends and family were witnessing the event." Three sentences later, Plaintiff claimed that Defendants "immeasurably and shamelessly benefited and profited from an error committed by a private individual at a time when he was most vulnerable and unsuspecting." Plaintiff argued in his opposition that his supposedly "accidental" and "unknowing" publication of the birth video meant that it should be treated as an unpublished work for purposes of the fair use analysis. Dkt. #43 at 1, 10-11.

4. The foregoing representations to the Court are contradicted by Plaintiff's public conduct and statements. Far from acting like a "vulnerable" and "unsuspecting" "private individual," Plaintiff has continued to make the birth video viewable by the public on Facebook for nearly ten months after he live-streamed it, even though it would be easy for him to change the setting so that only his Facebook friends could view the video. Moreover, Plaintiff cultivated media coverage by repeatedly giving interviews about the video to news outlets. In several interviews, Plaintiff said that he realized *while he was recording the birth video* that he was streaming it live to the public, and he consciously *decided* to continue streaming it to the public. Media interviews given by Plaintiff and his partner include the following:

    a. On May 16, 2016 – the same day that Plaintiff's child was born and he live-streamed the birth video – Canada's CBC News published an article with quotes from Plaintiff and his partner. CBC quoted Plaintiff as saying, "There is nothing to hide about having a kid. It's a blessing and just to share it with people, I think it's just an amazing thing." CBC reported that Plaintiff's partner said that the video was "pretty cool" and that she did not want it taken down. CBC quotes Plaintiff's partner as saying, "I'm really shocked that so many people seen the video … my baby's a

star." A printout of the CBC article is attached as Exhibit B, and it is available at http://www.cbc.ca/news/trending/baby-live-stream-1.3584699.

b. On May 17, 2016, Buzzfeed published an article titled "A Dad Captured The Entire Birth of His Newborn Son on Facebook Live." Buzzfeed reported that Plaintiff said he realized that the live stream was public about a half hour into recording, and he is not one to stop something he started, so he decided to continue recording. The article quotes Plaintiff: "It was kind of an opportunity for me to just share it and basically say, 'You guys are here with me.'" A printout of the Buzzfeed article is attached as Exhibit C, and it is available at https://www.buzzfeed.com/leticiamiranda/this-guy-livestreamed-his-newborn-sons-birth-and-people-sort?utm_term=.fpDmZOq89#.iyWq0Oej1.

c. On May 18, 2016, *People* magazine published an article online about Plaintiff and the birth video. *People* reported that Plaintiff said he initially did not realize he was live-streaming the video publicly, and that when he saw that the viewing figure was in the thousands he thought "for a second" about stopping the broadcast but decided to continue because he was "happy to share the good news with others." A printout of the *People* article is attached as Exhibit D, and it is available at http://people.com/celebrity/facebook-live-birth-livestreaming-father-comments-on-video/.

d. Plaintiff gave a live, on-air telephone interview to a local TV news program, *Good Day Sacramento*, about his live-streaming of his child's birth. Plaintiff remarked that he "always" live-streams video, and that he decided to live-stream the birth because it would counterbalance negative content found online and "would be kind of cool."

3

> Video that includes Plaintiff's interview is available at
> http://gooddaysacramento.cbslocal.com/show/latest-video/video-3401226-baby-delivery-video/.
>
> e. On May 27, 2016, the TV program *Inside Edition* aired an on-camera interview with Plaintiff and his partner about Plaintiff's live-streaming of his child's birth. The interview is available at http://www.insideedition.com/headlines/16654-couple-who-streamed-sons-birth-on-facebook-open-up-hes-going-to-hear-about-it.

5.  Throughout this litigation, Plaintiff and his counsel multiplied the proceedings and placed unnecessary burdens on NBCUniversal, other defendants, and the judges of this district. As an initial matter, Plaintiff and his counsel literally multiplied the proceedings by filing six separate actions in this district, against a total of ten defendants, with each complaint making similar allegations of copyright infringement based on uses of the same, publicly live-streamed birth video. The actions were filed between September 22 and October 24, 2016, and were styled *Kanongataa v. American Broadcasting Cos., et al.,* 16-cv-07382; *Kanongataa v. NBCUniversal Media, LLC,* 16-cv-07383; *Kanongataa v. CBS Broadcasting Inc., et al.,* 16-cv-07421; *Kanongataa v. Iheartmedia, Inc.,* 16-cv-07471; *Kanongataa v. COED Media Group, LLC,* 16-cv-07472; and *Kanongataa v. Rodale, Inc.,* 16-cv-08293.[1] On November 9, 2016, several defendants requested that the Court transfer their cases to a single judge, in light of the similar factual and legal issues, in order to promote the efficient use of judicial and party resources, and to avoid the possibility of inconsistent rulings. In an order dated November 17, 2016, this Court accepted all six cases for transfer under Local Rule 14 for the Division of

---

[1] On January 3, 2017, Plaintiff's counsel filed another lawsuit on Plaintiff's behalf against three new defendants, this time in the Eastern District of New York. The lawsuit alleges infringement of Plaintiff's copyright in a photograph he took of his newborn child. *See Kanongataa v. Cox Media Group, LLC et al.*, 17-cv-00031 (JFB) (GRB) (E.D.N.Y.).

4

Business Among District Judges. There was no reasonable basis for Plaintiff to resist having one judge preside over the cases, but Plaintiff nonetheless filed a letter opposing the transfer. The Court treated Plaintiff's letter as a motion for reconsideration and denied it.

6. Plaintiff and his counsel also multiplied the proceedings by filing, in bad faith, a request that the Clerk of Court enter default against NBC even though Plaintiff's counsel knew that NBC had filed a timely motion to extend its time to respond to the complaint. Pursuant to an order from Judge Schofield, who presided over NBC's case before its transfer to Judge Kaplan, NBC's response to the complaint was due on November 4, 2016. Because NBC and other Defendants were planning to request transfer of their cases to one judge within a few days after November 4, I decided to seek a further extension of the time to file a response to the complaint.

7. I expected Plaintiff's counsel to agree to an extension, since I had mentioned to him in the last week of October that I likely would seek one, and he did not object at that time. Plaintiff's counsel did not respond to messages I left for him on November 2 or 3. On the afternoon of November 4, Plaintiff's counsel finally stated that he did *not* consent to an extension because, in his opinion, NBC "has had plenty of time to respond to the complaint." Later that afternoon, I filed a timely letter motion seeking an extension of time to respond to the complaint until November 28, 2016, and noted in my letter motion that Plaintiff did not consent. Dkt. #12.

8. A few minutes after midnight on Saturday, November 5, Plaintiff's counsel filed a request that the Clerk of Court enter NBC's default, without mentioning that NBC's motion for an extension of time was pending. To oppose Plaintiff's bad-faith request to the Clerk for entry of default, I was forced to write and file a brief on the night of Sunday, November 6. On November 7, Plaintiff's counsel filed an opposition to NBC's request for an extension of time, which included Plaintiff's baseless assertion that he would be prejudiced if his various pending

5

copyright infringement cases over the birth video were to transferred to one judge. Later that day, Judge Schofield granted NBC's request for an extension of time to respond to the complaint. *See* Dkt. #13-#16.

9. In addition to the bad faith that Plaintiff and his counsel demonstrated by requesting entry of default against NBC, the manner in which Plaintiff and his counsel approached discovery placed unnecessary burdens on NBC. On December 12, 2016, this Court held the joint preliminary conference for Plaintiff's six cases, followed by a settlement conference with the Court for the NBC case only. Later that day, Plaintiff's counsel served NBC with document requests. We duly gathered and reviewed documents, and timely served our discovery responses and objections on January 11, 2017. In our responses, we stated that we would produce responsive documents after the entry of a suitable protective order, subject to withholding some requested documents on the basis of privileges and our other objections. Accordingly, I sent a draft proposed protective order to Plaintiff's counsel on January 13, 2017. He acknowledged receipt of the draft but never offered any comments on it or otherwise followed up on his own document requests. This made it clear to me that Plaintiff and his counsel had issued discovery requests to NBC not because they genuinely believed that they urgently needed information, but rather wished to burden NBC with the mechanics of discovery.

10. Indeed, Plaintiff and his counsel took a lackadaisical approach to their own discovery obligations. NBC served document requests and limited interrogatories upon Plaintiff on December 22, 2016. Plaintiff did not respond or object to NBC's discovery requests within the time provided by the Federal Rules. Rather, Plaintiff's counsel asked NBC on February 1, 2017 for an extension of time to respond, more than a week after the deadline for a response already had passed. Plaintiff's counsel's excuse was that his "client was unfortunately away." I

responded that NBC would agree not to move to compel Plaintiff's discovery responses if he served them by February 10, but that Plaintiff had waived any objections to our discovery requests by failing to raise them timely. Plaintiff did not dispute NBC's assertion of waiver, yet served responses and objections on February 3. Plaintiff divulged almost no information in response to NBC's interrogatories. He refused to identify anyone to whom Plaintiff had granted or offered licenses to use the birth video, or anyone with whom Plaintiff had communicated about his purposes or reasons for streaming the video online.

11.     Plaintiff and his counsel further multiplied the proceedings and made NBC do unnecessary work by filing an amended complaint that did nothing to fix Plaintiff's failure to state a claim, but which mooted NBC's pending Rule 12(c) motion for judgment on the pleadings and forced NBC to re-cast and refile its motion as a Rule 12(b)(6) motion to dismiss the amended complaint. On December 15, 2016, NBC filed its Rule 12(c) motion, arguing that this case should be dismissed on grounds of fair use. After filing our Rule 12(c) motion, I suggested to Plaintiff's counsel that he and I jointly ask the Court to combine the briefing of NBC's motion into the existing briefing schedule that the Court had set for the motions to dismiss filed by Defendants ABC/Yahoo and Coed Media. Plaintiff's counsel instead told me that he would file an amended complaint against NBC.

12.     Plaintiff filed the amended complaint on January 3, 2017, the last possible date on which he could amend the complaint as a matter of course under Rule 15(a)(1)(B). As the Court noted at the motion hearing on February 15, 2017, Plaintiff's amended complaint did not fix the original complaint's deficiencies. Instead, the only substantive change in the amended complaint was to *drop* all allegations about NBC's online use of the video. Although Plaintiff's amendment was immaterial to the fair use defense – which applied equally to NBC's uses on TV and online

– NBC nonetheless had to spend time and effort revising our Rule 12(c) motion, turning it into a Rule 12(b)(6) motion directed at Plaintiff's amended complaint, and refiling the motion. We filed our Rule 12(b)(6) motion on January 5, two days after being served with the amended complaint. We did that to ensure that the Court could join our motion to the briefing schedule for the ABC/Yahoo and Coed motions, under which Plaintiff's opposition was due on January 20, while still giving Plaintiff more than fourteen days to oppose NBC's motion.

13. Throughout this litigation, I repeatedly made clear to Plaintiff's counsel that NBC's use of the video was fair and explained that Plaintiff's claim against NBC was very weak.

14. As the Court found when it dismissed Plaintiffs' claims, the moving Defendants' uses of the birth video fit squarely within the fair use doctrine. Nonetheless, Plaintiff's counsel made inflated settlement demands to NBC and rejected a reasonable settlement offer. During the December 12, 2016 settlement conference between counsel for Plaintiff and NBC, the Court heard both NBC's offer and Plaintiff's demand, and noted that Plaintiff would need to reduce his settlement demand very significantly before he could expect NBC to increase its offer. But Plaintiff never reduced his demand after the settlement conference.

Dated:   March 1, 2017
         New York, New York

                                                          _____
                                                          Erik Bierbauer