**UNITED STATES DISTRICTCOURT**
**SOUTHERN DISTRICT OF NEW YORK**

KALI KANONGATAA,

                    Plaintiff,

          - against -                                 16 Civ. 7382 (LAK)

AMERICAN BROADCASTING
COMPANIES, INC. AND YAHOO! INC.,

                    Defendants.

KALI KANONGATAA,

                    Plaintiff,

          - against -                                 16 Civ. 7383 (LAK)

NBCUNIVERSAL MEDIA, LLC

                    Defendant.

KALI KANONGATAA,

                    Plaintiff,

          - against -                                 16 Civ. 7472 (LAK)

COED MEDIA GROUP, LLC

                    Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITON TO**
**ENTRY OF FEES AND SANCTIONS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES …………………………………………………………………i

PRELIMINARY STATEMENT………………………………………………………..1

BACKGROUND ………………………………………………………………………1

ARGUMENT …………………………………………………………………………...3

    I.       ATTORNEYS' FEES ARE INAPPROPRIATE UNDER 17 U.S.C. 505…………3

        A.  Plaintiff's Claims Were Objectively Reasonable ………………………………5

        B.  Plaintiff's Claims Lacked Frivolity ……………………………………………10

        C.  Plaintiff's Motivations Were Proper …………………………………………...11

        D.  A Fee Award Will Not Advance Compensation and Deterrence ……………..17

    II.     ATTORNEYS' FEES ARE INAPPROPRIATE UNDER 28 U.S.C. 1927………..20

    III.    DEFENDANTS SEEK RELIEF IN ORDER TO IMPROPERLY CHILL
          PLAINTIFF'S COUNSEL IN FILING OTHER LEGITIMATE CLAIMS………..22

CONCLUSION ………………………………………………………………………24

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*16 Casa Duse, LLC v. Merkin,*
    791 F.3d 247 (2d Cir. 2015) …………………………………………………………4

*Agee v. Paramount Communications, Inc.,*
    869 F.Supp. 209 (S.D.N.Y.1994), *as amended* (July 27, 1995) ………………………17

*Apex Oil Co. v. Belcher Co. of New York,*
    855 F.2d 1009 (2d Cir.1988) ……………………………………………………………20

*Baker v. Urban Outfitters, Inc.,*
    431 F. Supp. 2d 351 (S.D.N.Y. 2006), *aff'd,* 249 F. App'x 845 (2d Cir. 2007) …...13, 14

*BanxCorp v. Costco Wholesale Corp.,*
    723 F. Supp. 2d 596 (S.D.N.Y. August 31, 2016) …………………………………….9

*Brewer-Giorgio v. Bergman,*
    985 F. Supp. 1478 (N.D.Ga.1997) ……………………………………………………15

*BWP Media USA Inc. v. Polyvore, Inc.,* No. 13-CV-7867(RA),
    2016 WL 3926450 (S.D.N.Y. July 15, 2016) …………………………………4, 6, 12

*BWP Media USA, Inc. v. Mishka NYC LLC,* No. 13 CV 4435 (ENV)(LB),
    2016 WL 8309676 (E.D.N.Y. Dec. 28, 2016), *report and recommendation adopted sub*
    *nom. BWP Media USA Inc. v. Death Adders Inc.,* No. 13CV4435ENVLB, 2017 WL
    880855 (E.D.N.Y. Mar. 3, 2017) ………………………………………………………5

*Canal+ Image UK Ltd. v. Lutvak,*
    792 F. Supp. 2d 675 (S.D.N.Y. 2011) …………………………………………17, 19

*Caner v. Autry,* No. 6:14-CV-00004,
    2014 WL 2967607 (W.D. Va. July 1, 2014) …………………………………………16

*Chevrestt v. American Media, Inc.,* 16 Civ. 5557(LLS),
    2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016) …………………………………………9

*Chivalry Film Prods. v. NBC Universal, Inc.,* 05 Civ. 5627(GEL),
    2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007) ……………………………………6, 20

*Devocean Jewelry LLC v. Associated Newspapers Ltd.,* No. 16-CV-2150 (KMW),
    2016 WL 6135662 (S.D.N.Y. Oct. 19, 2016) …………………………………………9

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,*
    782 F.2d 329 (2d Cir. 1986) …………………………………………………17, 18

*Elvis Presley Enters., Inc. v. Passport Video,*
    349 F.3d 622 (9th Cir.2003), *overruled on other grounds as stated in Flexible Lifeline*
    *Sys., Inc. v. Precision Lift, Inc.,* 654 F.3d 989, 995 (9th Cir.2011) …………………7, 8

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)……………………………3, 4

*Great Importations, Inc. v. Caffco Int'l, Inc.,* No. 95CIV.0514(MBM)(SEG),
    1997 WL 603410 (S.D.N.Y. Sept. 30, 1997) ………………………………………19

*Hallford v. Fox Entm't Grp., Inc.,* No. 12 CIV. 1806 WHP,
    2013 WL 2124524 (S.D.N.Y. Apr. 18, 2013) ………………………………………20

*Harrell v. Van der Plas*, No. 08 CIV. 8252 (GEL),
    2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009) ………………………………………18

*Hines v. Dean,* No. 1:02-CV-3390-MHS,
    2005 WL 3159074 (N.D. Ga. Nov. 28, 2005) ……………………………………14, 15

*Infinity Broad. Corp. v. Kirkwood,*
    150 F.3d 104 (2d Cir.1998) …………………………………………………………..8

*John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08CV7834 (DLC),
    2016 WL 7392210 (S.D.N.Y. Dec. 21, 2016) ……………………………………4, 10

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.,*
    820 F. Supp. 2d 569 (S.D.N.Y. 2011) ……………………………………………14

*Kirtsaeng v. John Wiley & Sons, Inc.,*
    136 S. Ct. 1979, 195 L. Ed. 2d 368 (2016)………………………………………… 4

*Lewis v. Activision Blizzard, Inc.,* No. C 12-1096 CW,
    2014 WL 4953770 (N.D. Cal. Sept. 25, 2014) ………………………………………16

*L.A. News Serv. v. KCAL–TV Channel 9,*
    108 F.3d 1119 (9th Cir.1997) …………………………………………………………7

*Mathias v. Jacobs,*
    167 F.Supp.2d 606 (S.D.N.Y.2001) ………………………………………………21

*Matthew Bender & Co. v. W. Pub. Co.,*
    240 F.3d 116 (2d Cir. 2001) …………………………………………………………..4

*Monge v. Maya Magazines, Inc.,*
    688 F.3d 1164 (9th Cir. 2012) ……………………………………………6, 7, 8

*Murphy v. Millennium Radio Grp. LLC,*
    650 F.3d 295 (3d Cir.2011) ……………………………………………………7

*Neitzke v. Williams,*
    490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ……………………………10

*Núñez v. Caribbean Int'l News Corp.,*
    235 F.3d 18 (1st Cir.2000) …………………………………………………………7

*Oliveri v. Thompson,*
    803 F.2d 1265 (2d Cir. 1986) ……………………………………………………20

*Quadrozzi v. City of N.Y.,*
    127 F.R.D. 63 (S.D.N.Y. 1989) …………………………………………………18

*Revson v. Cinque & Cinque, P.C.,*
    221 F.3d 71 (2d Cir.2000) ……………………………………………………21, 22

*Richtone Design Grp., L.L.C. v. Classical Pilates, Inc.,* No. 06 CIV. 0547 NRB,
    2007 WL 1098706 (S.D.N.Y. Apr. 10, 2007) ………………………………………12, 13

*Sassower v. Field,*
    973 F.2d 75 (2d Cir. 1992) …………………………………………………11, 12

*Thompkins v. Lil' Joe Records, Inc.,* No. 02-61161-CIV,
    2008 WL 896898 (S.D. Fla. Mar. 31, 2008) ………………………………………14

*Torah Soft Ltd. v. Drosnin,*
    224 F. Supp. 2d 704 (S.D.N.Y. 2002) ……………………………………………21, 22

*Video-Cinema Films, Inc. v. Cable News Network, Inc.,* No. 98 CIV. 7128 (BSJ),
    2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) ………………………………………15

*Viva Video, Inc. v. Cabrera,*
    9 Fed.Appx. 77 (2d Cir. 2001) ……………………………………………………5

**Statutes**
17 U.S.C. §505 ……………………………………………………………………passim

28 U.S.C. §1927 …………………………………………………………………passim

**Rules**
Fed. R. Civ. P. 12(b)(6) ………………………………………………………6, 10

Fed. R. Civ. P. 54(d) …………………………………………………………………1

## PRELIMINARY STATEMENT

Plaintiff Kali Kanongataa ("Kanongataa") respectfully submits this memorandum of law in opposition to Defendants NBCUniversal Media, LLC ("NBC"), American Broadcasting Companies, Inc., Yahoo! Inc. ("ABC/Yahoo"), and Coed Media Group, LLC ("CMG"), or collectively "Defendants'" motion for attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d), 17 U.S.C. §505, 28 U.S.C. §1927 and the Court's inherent powers.

## BACKGROUND

Facts surrounding these related cases are familiar to the Court and will not be repeated. This Court has held that the Defendants' use was fair. The Plaintiff has accepted the ruling as final and respects the rationale behind the Court's opinion. With that being said, the Defendants' crusade did not end there. In an effort to excessively chill the Plaintiff's counsel from filing all cases, regardless of merit, the Defendants have banded together in a transparent attempt to stem the bleeding. The prevailing parties in this suit are otherwise repeat infringers who have heretofore relied on the prohibitive cost of litigation in their respective business models. Given that previously no photographer could effectively challenge these media behemoths, they have acquiesced to copyright infringement as a cost-efficient model. For these industry giants the expense and time required for compliance with the Copyright Act always outweighed the risk of a creator enforcing his or her rights. While this present case is resolved as fair use, granting the Defendants' attorneys' fees would greatly undermine the goals set forth in the Copyright Act. As argued below, the Plaintiff's claims were objectively reasonable, pled without an indicia of frivolity, and in good faith. Under the prevailing standard, the Court should deny the motion for attorneys' fees pursuant to 17 U.S.C. §505. Similarly, based on these facts attorneys' fees are inappropriate under 28 U.S.C. §1927 and the exercise of Court's inherent powers. The

applicable standard relevant to sanctions under §1927 falls well below the alleged conduct, even if the conduct the Defendants complain about were accurate.    In short, the Defendants simply cannot and do not effectively justify the levying of attorneys' fees in this case.

The Defendants make much of the representation of the Plaintiff as a vulnerable, unsuspecting, and private individual.    While it is true that the Plaintiff was characterized in those terms, there are important points here: 1) nothing that Defendants offer contradicts those characterizations, 2) those characterizations of the Plaintiff are not salient to the finding of fair use.    First, in all subsequent media interviews the Plaintiff has always maintained that he did not intend to broadcast the birth and didn't realize it was happening until his cousin commented. That still does not mean he knew it was being broadcasted to everyone but is consistent with thinking that only close friends and family were witnessing the event.    It is conceivable and logical that in the excitement of the event, he did not consider the full ramifications of social media feedback that followed.    The Plaintiff has maintained that he did not intend to live cast the birth to everyone throughout the proceeding.    Second, the reason why this fact never appeared in the Complaint nor as a sworn statement before the Court, this Court aptly noted, is because it is irrelevant.    No one contends that whether this event was intended to be private, or semi-private or just broadcast live is important in determining whether its use was fair.    The Defendants conceded that much during oral argument, at the behest of this Court's questioning. This Court clearly found that since the fact is not properly before it, it makes no difference to the finding of fair use.    Even the Plaintiff did not find the fact germane to the issue at hand. Whether or not the Plaintiff intended to live cast the birth would be an excellent question if this was a privacy case, but alas, it is not.    To obscure the issues of whether attorneys' fees are relevant serves no purpose.    Intended or not, realizing before the birth or after, taking down the

2

video after or not – these are not relevant considerations for fair use.   The Plaintiff's counsel used such terms for narrative purposes, to give context and life to the story.   Why the Defendants chose to focus on these terms is puzzling, especially since their evidence to the contrary is equally subjective, descriptive, unsworn and speculative.

The Defendants spend much time documenting Plaintiff's litigation tactics and strategies. While the Plaintiff can create an equally frustrating and outrageous list of behaviors, that exercise would be counter-productive.   As explained below, the standard for vexatious, improperly motivated behavior consistent with bad faith demands conduct that is different in kind, not just in degree, from that exhibited by the Plaintiff and his counsel.   The case law is very clear that the complained of behavior, even if it were true, simply does not warrant an award of attorneys' fees.

## **ARGUMENT**

I.    ATTORNEYS' FEES ARE INAPPROPRIATE UNDER 17 U.S.C. §505.

The Copyright Act allows the Court, at its discretion, to award attorneys' fees as part of costs to the prevailing party in a dispute.  17 U.S.C.  §505.   In interpreting this statute in *Fogerty v. Fantasy*, the Supreme Court held that the Court "may" award attorneys' fees through an exercise of equitable discretion.   *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 518, 114 S. Ct. 1023, 1025, 127 L. Ed. 2d 455 (1994).  In light of the presumption that parties bear their own costs, the Supreme Court identified several considerations that should guide the Court's determination of whether attorneys' fees are appropriate.   "[A] district court determining whether to exercise its discretion to award fees under the Copyright Act may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and

deterrence." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264 (2d Cir. 2015) (citation omitted). These factors may be used only "so long as [they] are faithful to the purposes of the Copyright Act." *Fogerty,* 510 U.S. 534 n. 19.

In the wake of *Fogerty* several circuits, including this Circuit, have accorded the objective reasonableness factor substantial weight in determinations whether to award attorneys' fees. *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 121 (2d Cir. 2001). In fact, District Courts in the Second Circuit had relied upon objective reasonableness as a litmus test for whether fee-shifting is appropriate. In *Kirtsaeng v. John Wiley & Sons, Inc.*, the Supreme Court clarified the guidance it had issued in *Fogerty.* "Without governing standards or principles, such provisions threaten to condone judicial "whim" or predilection. "A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1986, 195 L. Ed. 2d 368 (2016) (internal quotation marks and citations omitted).

Following *Kirtsaeng*, District Courts in this Circuit have looked at the inquiry through the prism of the Copyright Act's goals. "[T]hose objectives are well settled. As Fogerty explained, 'copyright law ultimately serves the purpose of enriching the general public through access to creative works.' The statute achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. Accordingly, fee awards under § 505 should encourage the types of lawsuits that promote those purposes. *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08CV7834 (DLC), 2016 WL 7392210, at *2 (S.D.N.Y. Dec. 21, 2016) (internal quotation marks and citation omitted); *BWP Media USA Inc. v. Polyvore, Inc.*, No. 13-CV-7867(RA), 2016 WL 3926450, at *9 (S.D.N.Y. July 15, 2016) ("[T]he Supreme Court instructed that in analyzing requests for fees pursuant to § 505, courts

4

must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals.") (internal quotation marks and citation omitted); *see also BWP Media USA, Inc. v. Mishka NYC LLC*, No. 13 CV 4435 (ENV)(LB), 2016 WL 8309676, at *2 (E.D.N.Y. Dec. 28, 2016), *report and recommendation adopted sub nom. BWP Media USA Inc. v. Death Adders Inc.*, No. 13CV4435ENVLB, 2017 WL 880855 (E.D.N.Y. Mar. 3, 2017) (same).

It follows that the Court should evaluate each factor more thoroughly and not let objective reasonableness be dispositive of its determination.   Furthermore, the analysis should be firmly grounded in the explicit objectives of the Copyright Act:  a) to encourage and reward author's creations; and b) to enable others to build on that work.

A.  Plaintiff's Claims Were Objectively Reasonable

Undoubtedly a significant factor in the Court's analysis is whether the claims asserted are objectively unreasonable.   In order to be objectively unreasonable, it is not enough for the claims to be meritless.   Plaintiff's "inability to substantiate any of [its] allegations ... does not as a matter of law require an award of fees." *Viva Video, Inc. v. Cabrera*, 9 Fed.Appx. 77, 80 (2d Cir. 2001) (affirming district court's decision to deny fees with regard to general objective unreasonableness and bad faith) (internal emphasis omitted).   In *Viva Video*, the Court went so far as to say that Plaintiff "conducted its case quite poorly and was unable to support its claims" in its decision to uphold the District Court' finding that fees were not warranted.   Objective reasonableness is not whether the Court agrees with the non-prevailing party, for clearly that would defeat the presumptive American Rule.   Rather, it is an inquiry beyond the merits of the case.   Every non-prevailing argument and defeated claim cannot be responsible for its adversary's fees.   The same is true for every finding of fair use.   Even a finding of fair use on a 12(b)(6) motion cannot be coextensive with objective unreasonableness.

Courts have repeatedly held that objective unreasonableness must amount to an element beyond a failure to sustain allegations. *BWP Media USA Inc. v. Polyvore, Inc.,* 2016 WL 3926450, at *9 ("Although the Court disagrees with Plaintiffs on the merits, it does not construe their arguments as being objectively unreasonable or frivolous.")   In that case, the Court found that the photographs in questions undisputedly belonged to the Plaintiff and that the Defendant did not have permission to post them on its website.   Those facts alone made the Plaintiff's position, though ultimately meritless, objectively reasonable.  "[T]he mere fact that a defendant has prevailed does not necessarily equate with an objectively unreasonable claim. To hold otherwise would establish a per se entitlement of attorney's fees whenever issues pertaining to judgment are resolved against a copyright plaintiff." *Chivalry Film Prods. v. NBC Universal, Inc.,* 05 Civ. 5627(GEL), 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007) (internal quotation marks and citations omitted).

Similarly, Kanongataa owns a valid copyright registration for the video in question.  The Plaintiff's copyright ownership is, crucially, undisputed.   Still uncontested is the fact that Defendants did not have permission, consent nor license to use the video.  Those facts alone make a claim for copyright infringement objectively reasonable.   Beyond the mere facts, the Plaintiff also relied on competing case law that, though it did not curry favor with the Court, made his claim objectively reasonable.

Without rehashing the merits of the present case, the Plaintiff points to several decisions that informed his objectively reasonable position.   In *Monge v. Maya Magazines, Inc*., 688 F.3d 1164 (9th Cir. 2012) the Court admonished that "[w]hile the parties agree that the pictures at issue are newsworthy, we must nevertheless proceed cautiously because [t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a

fair use 'news report' of the [work].  *Id.* at 1173. (internal quotation marks and citation omitted).

That Court further held that while it is a mere example of fair use, news reporting does not alone

substantiate a finding of fair use.   "Fair use has bounds even in news reporting, and no per se

'public interest' exception exists." *Id.   See also Murphy v. Millennium Radio Grp. LLC,* 650

F.3d 295, 307 (3d Cir.2011) ("[N]ews reporting does not enjoy a blanket exemption from

copyright. News organizations are not free to use any and all copyrighted works without the

permission of the creator…"); *Núñez v. Caribbean Int'l News Corp.,* 235 F.3d 18, 22 (1st

Cir.2000) (denying that use of the photographs are necessarily fair merely because the

photographs were used for news purposes, and rejecting a general 'newsworthiness' exception).

Sister circuits Court of Appeals across the nation make the salient point that news reporting does

not suspend the rights accrued under the Copyright Act.   If the Court's analysis of objective

reasonableness conforms to the goals of the Copyright Act, then it must a) encourage the creation

and b) enable the use of work.

In this case, the Plaintiff relied on several cases inside and outside of this Circuit for the

proposition that news reporting is not a panacea for copyright infringement.   Additionally, in

support of the Plaintiff's claim several decisions in the 9th Circuit favored a different outcome.

See *L.A. News Serv. v. KCAL–TV Channel 9,* 108 F.3d 1119, 1122 (9th Cir.1997) (rejecting the

that news broadcast added anything new or transformative to what made the work valuable).   In

that case, a news station broadcast a clear, visual recording of the beating of Rodney King during

a breaking news segment on the LA riots.   That Court rejected the fair use defense even though

the station ran its own voice-over while airing a part of the video.   Other Courts held that minor

changes, such as placing "voice-overs" on video clips, do not "necessarily transform a work."

*Elvis Presley Enters., Inc. v. Passport Video,* 349 F.3d 622, 628–29 (9th Cir.2003), *overruled on*

*other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,* 654 F.3d 989, 995

(9th Cir.2011) (per curiam).   Still other decisions held that "merely plucking the most visually

arresting excerpt from nine minutes of footage cannot be said" to be transformative.  *Monge v.*

*Maya Magazines, Inc.,* 688 F.3d at 1174.  The case law favoring the Plaintiff's position,

however, was not limited to the 9th Circuit.  In a Second Circuit decision even if an infringer has

a separate and different purpose, that by itself, does not necessarily create new aesthetics or a

new work that "alter[s] the first [work] with new expression, meaning or message." *Infinity*

*Broad. Corp. v. Kirkwood,* 150 F.3d 104, 108 (2d Cir.1998) (internal quotation marks omitted).

A "difference in purpose is not quite the same thing as transformation." *Id.*  A plethora of cases

that favor the Plaintiff's position make his copyright infringement claims objectively reasonable

and while this Court disagrees with the merit of these specific claims, its swift dismissal of the

claims suffices.

        In addition to being objectively reasonable, the argument advanced by the Plaintiff

supports the goals of the Copyright Act in that it encourages creation of the work without fear of

that work being misappropriated under the guise of news reporting.   Similarly, the Plaintiff's

argument would have enabled others to build on the said work by specifying what kind of

additions, commentary, and criticism is required for a finding of fair use.   Beyond the shield of

news reporting, Plaintiff's position would clarify that in order to use another copyright holder's

work one must add a new aesthetic, furnish a new message, or foster a new understanding.

        Conversely, leveling attorneys' fees against this Plaintiff would both discourage creation

of works by authors fearful of the broadening of the fair use defense, and impede those who

build upon that work by creating confusion about the applicable standard of finding the use

transformative, especially in the Second Circuit.   While the Court may find the instant use

clearly fair, to broadly discourage litigators eager to get clarification of the applicable standard does not serve the objectives of the Copyright Act.

Regarding Kanongataa's DMCA claim, that argument was based on a decision in this District Court that not only succeeded *Chevrestt v. American Media, Inc.,* 16 Civ. 5557(LLS), 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016) but took had the benefit of *Chevrestt* on a supplemental submission by defense counsel in that case.   In *Devocean Jewelry LLC v. Associated Newspapers Ltd.*, No. 16-CV-2150 (KMW), 2016 WL 6135662, (S.D.N.Y. Oct. 19, 2016), the Court reviewed Hon. Judge Stanton's decision in *Chevrestt* and found it unpersuasive. Instead, Hon. Kimba Wood found that "Plaintiff has done enough by alleging that Defendant removed the CMI from the Screen Grabs and by attaching as an exhibit to the Complaint a copy of the article in which the altered screen grabs appeared. *Id.* at *2.   In its decision, the Court reiterated that at a motion to dismiss stage, the Court must take the Plaintiff's allegations as true and make all reasonable inferences in the Plaintiff's favor.  Furthermore, that Court found that attaching a copy of the infringing material goes well beyond a conclusory allegation and suffices for the purposes of a well-pled complaint.   *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 610 (S.D.N.Y. August 31, 2016).

Defendants are correct to point out the similarity in DMCA claim language between the present case and *Chevrestt*, but fail to also note this same language is found in *Devocean*'s DMCA claim.  Where the latter DMCA claim was found legally sufficient, in a decision that not only succeeded the former, but had the benefit of *Chevrestt's* opinion – asserting a substantially similar claim is not only objectively reasonable but prudent.

9

B.  Plaintiff's Claims Lacked Frivolity

In considering frivolity, the Court may look to the objective reasonableness analysis.  *See John Wiley & Sons, Inc. v. Kirtsaeng*, 2016 WL 7392210, at *2 ("For the same reasons that Wiley's litigating position was objectively reasonable, it was not frivolous.")  Outside of the copyright context, the Supreme Court has held that "[a] complaint is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).

Importantly, *Neitzke* emphasized the distinction between failure to state a claim pursuant to Fed. R. Civ. P. 12 (b) (6) and frivolity.   "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id.* at 328.  The Supreme Court even contemplated the impact on litigants that mimics the analysis in *Kirtsaeng*.

Similarly, the fact that the present Court ruled against the Plaintiff in a 12(b) (6) motion should not be concomitant to a finding of frivolity.  The Plaintiff has already made a sufficient showing of objective reasonableness above and posits that his claim had no indicia of frivolity.  Taking to heart the Second Circuit's admonition that fair use analysis is a fact-intensive and fact-specific inquiry, the Plaintiff made a claim for copyright infringement that was based in fact and law.   He was the copyright owner and the Defendants did publish and display his work without permission.   This Court's dismissal of the claims pursuant to the fair use defense does not is not make these claims frivolous, just ultimately meritless.

10

C.  Plaintiff's Motivations Were Proper

While the Defendants wildly speculate as to the improper motivations at play in this case, the truth, as it often is, is much more simple.   These three related cases were quickly resolved on one motion to dismiss.   After much consideration, the Plaintiff chose not to appeal the decision and accept the Court's ruling as the definitive resolution.   There has hardly been any discovery while this motion was pending and on the whole, the Plaintiff has cooperated with his adversaries and the Court at every juncture.   Improper motivations are typically ascribed to parties that behave quite differently.   A seminal case that illustrates the kind of behavior that Courts find indicative of improper motivations is *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992).

In that case, pro se Plaintiffs (one of whom was an attorney) made several unsupported bias recusal motions based upon the court's unwilling involvement in some of the earlier proceedings.  There were continual personal attacks on the opposing parties and counsel.  In virtually every instance where a court ruling was not satisfactory to them, plaintiffs routinely made a motion to reargue. In addition, plaintiffs filed two improper interlocutory appeals which were subsequently withdrawn.  Finally, they filed a mammoth motion for a new trial and sanctions against opposing counsel which sought to reargue virtually every aspect of the litigation for the third time.  The District Judge also noted that the plaintiffs "attempted to communicate directly with the defendants rather than through counsel in order to force through their settlement demands." The Magistrate Judge supervising discovery had recommended dismissal of the complaint because of Doris Sassower's egregious failure to allow discovery as directed by the Court. The District Judge, noting misbehavior warranting sanctions, observed:

> It is patently clear that Doris L. Sassower has been guilty of attempting to manipulate the court by appearing as attorney on those matters which could assist her case while refusing to be deposed herself, claiming health problems.

*Id.* at 78. The Court also noted her recalcitrance at her own deposition and her role assisting another attorney "in conducting incredibly harassing depositions of certain of the defendants." Some of that questioning included what the Court termed "particularly shocking and abusive" questioning of a Black member of the coop's board of directors, questioning laced with racial innuendo. "From the relatively simple molehill of potential issues which could possibly arise from such conduct, Sassower has created a mountain of legal, factual and even political abracadabra. Her actions have taken an inordinate amount of this Court's time and tested its patience beyond the wildest imagination.... [M]onths of actual court time [were] spent in permitting Sassower to preserve her rights by trick and chicanery beyond the concept of most any lawyer who practices in our courts. She is indeed sui generis in her actions...." *Id.*

The Plaintiff in this case does not come close to the gold standard set by Sassower's conduct. Even if Defendants' allegations, such as withholding consent on requests for extension without offering a sufficient reason, were true – this conduct is hardly vexing or improper. Plaintiff's conduct in this litigation hardly rises to the occasion. Even in cases, where the Court opined on the inefficiency or diligence of counsel, the motion for attorney's fees have been rejected. *BWP Media USA Inc. v. Polyvore, Inc.*, 2016 WL 3926450, at *9 ("Plaintiffs should have been more diligent in seeking discovery in a timely manner.")

Indeed, attorney's fees are hardly ever granted when the case is disposed of early. "It must also be remembered that this was a brief litigation which was resolved after a single motion, a far cry from the litigation tactics of the Sassowers, who 'pursued [their] litigation as if it was a holy war and not a court proceeding, managing these proceedings in a fashion that vexatiously, wantonly and for oppressive reasons increased the legal fees enormously.'" *Richtone Design Grp., L.L.C. v. Classical Pilates, Inc.,* No. 06 CIV. 0547 NRB, 2007 WL

1098706, at *2 (S.D.N.Y. Apr. 10, 2007).  In that case, the plaintiff made no motions for recusal, no personal attacks upon its adversaries, no motions to reargue, but opted to ask for oral argument and a sur-reply.  After losing the case, the plaintiff filed no appeals.  *Id.* ("Plaintiff may have asserted arguments that were ultimately unavailing, but we cannot conclude that it conducted this case in bad faith. As such, we cannot sustain the 'high degree of specificity in the factual findings' necessary to warrant our invocation of this Court's inherent powers.")

The factual allegations leveled against this Plaintiff, even if true, more closely resemble the facts in *Richtone Design* than those in *Sassower*.  The conduct of which the Defendants vehemently complain simply doesn't rise to the level of frivolity required for fee-shifting.   Even if all of Defendants accusations were accurate, and they are not, the resulting conduct could hardly be characterized as vexatious, or in bad faith.

The Defendants cite to *Baker v. Urban Outfitters, Inc.,* 431 F. Supp. 2d 351 (S.D.N.Y. 2006), *aff'd,* 249 F. App'x 845 (2d Cir. 2007) for the proposition that improper motivate or bad faith demands an award of attorneys' fees.   In that actual damages case, the plaintiff filed for an injunction against the defendant whose conduct had ceased prior to the commencement of the action.  *Id.* at 357.  After finding out that defendant has sold only 862 plastic picture frames (worth less than $4,000), the plaintiff persisted in its demand in excess of $260,000 despite many generous counteroffers.  *Id*. at 358. Additionally, the Court gleaned the true motivation of that suit by examining correspondence between plaintiff's agent and his counsel.  These correspondences reveal a calculated approach to exhort "stupid, obstinate, deep pocketed" defendants and benefit the public profile of both the agent and attorney.   The attorney further admitted that "this case should not have progressed past service of a complaint."  These cynical and troubling revelations were compounded with false allegations in the complaint that the

model used in the photo shoot was a internationally known profession model requiring a fee for use of likeness.  None of these allegations were true and the plaintiff knew them to be false.  In fact, plaintiff continued to demand damages of more than a quarter of a million dollars—even after a settlement conference with the Court in which the applicable legal principles were discussed. Justifying its outrageous demand, the plaintiff claimed even more damages, including "a moral debt that he felt he owed" to the model, and damages attributable to his own "moral rights" claim.  *Id*. at 359.

In sum, *Baker* awarded the prevailing defendant attorney's fees under Section 505 because 1) the plaintiff had lied in discovery, prolonging the discovery process, *id.* at 356; 2) the plaintiff had filed the case in bad faith, to obtain publicity for the plaintiff and his counsel, *id.* at 358; and 3) the plaintiff's damage claim was objectively unreasonable, at almost 100 times the plaintiff's actual damages; *id.* at 358-59.   The facts of the present case do not come close to the facts in Baker in terms of patent improper purpose and motivation.

Several Court have found that a plaintiff willing to present an important issue of first impression, or to question and challenge a murky area of the law is properly motivated, raising non-frivolous, good faith claims.   *See Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 575 (S.D.N.Y. 2011) ("[C]laim lay in a murky area of copyright law, was supported by a valid copyright registration, and was litigated in good faith."); *Thompkins v. Lil' Joe Records, Inc.,* No. 02-61161-CIV, 2008 WL 896898, at *8–9 (S.D. Fla. Mar. 31, 2008) ("Plaintiff's claim was not unreasonable and raised an important issue of first impression in this Circuit, which had been decided in Plaintiff's favor in two other circuits."); *Hines v. Dean*, No. 1:02-CV-3390-MHS, 2005 WL 3159074, at *3 (N.D. Ga. Nov. 28, 2005) (rejecting an award for attorney's fees where there was no dispute that defendants had access to plaintiff's works and

could have copied them, and plaintiff put forward some evidence, albeit weak, that the works in question were similar); *Brewer-Giorgio v. Bergman,* 985 F. Supp. 1478 (N.D.Ga.1997) (rejecting an award of attorneys' fees where it was undisputed that the defendants had access to plaintiffs' copyrighted works, but the evidence ultimately showed that the defendants' allegedly infringing work was not substantially similar to plaintiffs'.)   This case is more like the cases above where the Plaintiff owns his copyright in the video, the Defendants displayed video clips without permission and there was a question of whether fair use doctrine covered their conduct.  The Court resolved that fair use did protect the Defendants from a copyright infringement claim, but given that this area of law is very fact-specific and murky, especially in light of recent Second Circuit Court of Appeals cases, the Plaintiff had the proper motivation to bring the suit and exhibited no indicia of bad faith.

The Defendants also rely on *Video-Cinema Films, Inc. v. Cable News Network, Inc.,* No. 98 CIV. 7128 (BSJ), 2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) to substantiate their claim for attorneys' fees.  Though fair use was at the center of that case, the similarities end there.  The plaintiff in that case created an artificial requirement of "essential" or actual "necessity" in order to qualify for a fair use defense.  However, in its brief the plaintiff cited to portions of opinion that did not even address the fair use doctrine, rather opting to frame the issue as First Amendment privilege.   *Id*. at *3. The present Plaintiff was faithful, perhaps to a fault, to the doctrine of fair use in this Circuit.   He did not attempt to create new categories, erect new requirements but merely questioned whether the Defendants' use could be construed as transformative, given the pronouncements from the Second Circuit Court of Appeal on the issue.  Briefly, Plaintiff argued that 1) it was too early to decide the fair use issue and 2) the four factors

do not favor a finding of fair use.   While the Court disagreed with the Plaintiff on both points, the argument was in good faith and indicative of proper motivations.

The Defendants further allege that the Plaintiff rejected reasonable settlement offers, citing to *Lewis v. Activision Blizzard, Inc.,* No. C 12-1096 CW, 2014 WL 4953770 (N.D. Cal. Sept. 25, 2014) ("Blizzard subsequently made an offer of judgment for nearly forty times that amount ($15,000), to which Lewis never responded.").   Had the Plaintiff in this case received a reasonable offer, as he had in 4 other cases (3 of which was before this Court), then he would have accepted such offers gladly.   While this Court may consider these other settlements as having nuisance value, Plaintiff's acceptance of them also mitigates against bad faith or vexatious behavior intended to delay, protract or otherwise escalate litigation costs.   Having no desire to prolong the litigation beyond what is necessary, Plaintiff accepted modest settlement amounts as soon as such offers were on the table.   It follows that whatever the Defendants were offering was unreasonable.

To further support their point, the Defendants cite *Caner v. Autry*, No. 6:14-CV-00004, 2014 WL 2967607 (W.D. Va. July 1, 2014).   Shortly after that case was filed, defendant agreed to give plaintiff everything he sought in this suit, and more. Within two days of the filing of the first complaint, defendant reached out, even removed some uncontested videos of Plaintiff, and agreed that he would not post any videos of plaintiff in the future if plaintiff would drop the suit. Plaintiff then requested that defendant sign a non-disparagement agreement and answer some informal interrogatories. Defendant did so, hoping to settle. *Id.* at *5.   In addition to a reasonable offer to settle, the defendant in that case went well beyond the demand.   That case simply does not reflect the settlement negotiations in this case.

It is also instructive to consider how this case is different from *Agee v. Paramount Communications, Inc.,* 869 F.Supp. 209 (S.D.N.Y.1994), *as amended* (July 27, 1995), a copyright case cited by the Defendants in which defendants had to respond to a motion to disqualify defense counsel where "[i]t was obvious to th[e] court that plaintiff's motion ... was without evidence to support any reasonable demonstration of a conflict and that it was brought to harass defendants and escalate the costs of litigation." *Id.* at 212.  No such motions were made in this case.   Beyond the frivolous motion to disqualify, in *Agee,* "plaintiff obtained an *ex parte* Temporary Restraining Order (TRO) under, at best, dubious circumstances." *Id.* at 211. "Plaintiff did not notify defendants' counsel" of his intent to move for a TRO and "failed to inform [the court] that Paramount had pledged not to rebroadcast that particular episode" after informing the Court that Paramount intended to do just that. "When the deception was discovered and [the court] informed of the true facts, the order was vacated a mere three hours after it had taken effect." *Id.* It is clear from the facts in *Agee,* in contrast to the present facts, that the problem was pervasive and deserving of an award for fees.   And "while deceiving the court is not a prerequisite to an award of fees, the contrast between" the instant case and *Agee* reveals that Plaintiff's counsel merely filed a claim that turned out to be bad, not that it was filed in bad faith. *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 690 (S.D.N.Y. 2011).

D.   A Fee Award Will Not Advance Compensation and Deterrence

The need to deter objectively unreasonable, frivolous, improperly motivated suits must always be balanced by the need to encourage litigants who have colorable claims or claims regarding a murky area of the law to come forward.   *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,* 782 F.2d 329, 344 (2d Cir. 1986) ("To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we

17

have declined to uphold awards under the bad-faith exception absent both "'clear evidence' that the challenged actions 'are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes.'").   The present case is not entirely without color, nor could the Defendants show clear evidence that the claims came about for the improper purposes, including harassment and delay.   To repeat, Plaintiff had a valid copyright and the Defendants displayed his work without permission.   That suffices as a colorable claim, even barring the Defendants' failure to show improper motivation.

Several cases decided in this District have outlined the kind of conduct that belies improper purpose deserving of sanctions.   In *Quadrozzi v. City of N.Y.,* 127 F.R.D. 63 (S.D.N.Y. 1989) the Court did not award sanctions under §1927 or it's inherent power because of a lack of clear evidence that plaintiffs willfully abused the judicial process.   That Court reasons that "after an exhaustive review of the mountains of paper submitted in connection with this litigation, the Court cannot find plaintiffs advanced a colorless claim for an improper purpose. As is evident from this opinion, plaintiffs' conduct was far from exemplary. Indeed, plaintiffs' counsel's actions frustrated the City in its discovery attempts, prolonged this litigation, and wasted limited judicial resources." *Id.* at 83–84.   Even in a case where the Court was clearly frustrated the plaintiffs' conduct in delay, frustration and waste – no impropriety was imputed.   Similarly, the Defendants in this case complain of trivial impediments in this relatively brief litigation.   Such complaints do not amount to much in terms of improper purpose.

Defendants cite *Harrell v. Van der Plas*, No. 08 CIV. 8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009) to support the notion "that award attorneys' fees will properly incentivize copyright defendants to fight meritless claims." Def. Memorandum Of Law pg. 13. That confuses the standard since, as already discussed meritless claims are not the same as

18

frivolous, objectively unreasonably, improperly motivated claims.   While Harrell is keen to deter nuisance settlements, it also observes that "the relative equality of the parties' position-plaintiff is an author of a niche book and defendants are a small, independent press-only underscores this point. *Id.* at *5.   That is to say that when parties are equally matched then the Courts should be more motivated to incentivize defendants to enforce their rights and avoid nuisance settlements.   "[F]ee awards are at bottom an equitable matter, the Second Circuit has stated that courts should not hesitate to take the relative wealth of the parties into account." *Canal,* 792 F.Supp.2d 680.

Needless to say, the parties in the present litigation could not be more unmatched.  The Plaintiff is a private individual while the Defendants include the leading media and publishing companies.   To suggest that these Defendants needs an award of attorneys' fees to incentivize defending their rights, real or imagined, is absurd.   These Defendants are industry leaders, and with the exception of CMG, have vast legal departments that specialize in copyright enforcement.   These Defendants, and those similarly situated do not require incentivizing to defend themselves.   Conversely, an exorbitant award of attorneys' fees would excessively chill any creator of content who isn't clear about whether a particular use is fair.  Any private individual would who has a colorable claim, even it turns out to be a losing claim, would be discouraged to enforce his or her rights.   That is not a desirable result according to the objectives of the Copyright Act.   *Great Importations, Inc. v. Caffco Int'l, Inc.,* No. 95CIV.0514(MBM)(SEG), 1997 WL 603410, at *1 (S.D.N.Y. Sept. 30, 1997) ("[A]n award here could have a chilling effect on future plaintiffs seeking to protect their copyrights. They would have to choose between losing their rights or risking that a court might disagree with them as to infringement and award substantial fees.").  Likewise, neither the factual circumstances of the

Plaintiff's claims as discussed above nor his manner of prosecuting them warrants a departure from the "American rule" of each party's bearing its own expenses, and an award would not be in the interests of the purposes of the Copyright Act. *See Hallford v. Fox Entm't Grp., Inc.,* No. 12 CIV. 1806 WHP, 2013 WL 2124524, at *2 (S.D.N.Y. Apr. 18, 2013) (emphasizing that knee-jerk awards would chill excessively). Worse still, awarding attorney fees may chill litigation of close cases, and prevent "the clear demarcation of the boundaries of copyright law." *Chivalry Film Prods.,* 2007 WL 4190793, at *2. Consequently, it difficult to conceive of a Copyright Act goal that an award in this case would serve.

## II.    ATTORNEYS' FEES ARE INAPPROPRIATE UNDER 28 U.S.C. §1927

Moreover, the case Defendants rely upon, *Oliveri v. Thompson*, 803 F.2d 1265, (2d Cir. 1986) emphasizes the high threshold of improper conduct that must be present in order to justify an award of attorneys' fees pursuant to §1927. That Court admits that it has "declined to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts." *Id.* at 1272. No such high degree of specificity is possible in the present case. The Defendants' laundry list of concerns does not deprive the claim of some color nor does it imbue the Plaintiff's purpose with impropriety. *Oliveri* is inapposite to the Plaintiff's conduct.

Similarly, in *Apex Oil Co. v. Belcher Co. of New York,* 855 F.2d 1009 (2d Cir.1988), the sanctioned attorney's improper purpose was demonstrated by his forcing his adversary to make motions to compel discovery, only to comply with the discovery requests at the last minute. On three separate occasions defense counsel refused to comply with plaintiff's reasonable requests for admissions, document production and the identification of an expert. In each instance, prior

to making its motion, plaintiff's counsel attempted to resolve the matter informally but to no

avail.  Then in each case, plaintiff's counsel was "told to make a motion." After each motion was

made, defense counsel "mysteriously," in the district court's words, complied with the requests.

*Id.* at 1020.  This pattern of behavior is unlike anything that transpired in the present case.

  The unfortunate gold standard in §1927 motion is the *Revson* case. *See Revson v. Cinque*

*& Cinque, P.C.,* 221 F.3d 71 (2d Cir.2000).  There, the district court identified eleven different

instances of sanctionable behavior by the attorney, including: (1) threatening to "tarnish" the

reputation of opposing counsel and subject him to the "legal equivalent of a proctology exam";

(2) publicly accusing the opposing attorney of fraud; (3) threatening to interfere with other

clients of the opposing attorney; (4) threatening to sue opposing counsel individually and seek

discovery of his personal finances; and (5) threatening to send the court a letter accusing

opposing counsel of criminal conduct. *Id*. at 77–78.  Much to dismay of those at bar, the Second

Circuit, found that sanctions under §1927 were still not warranted. *Id.* at 82.

  As one court later observed: "[T]he lawyer's extreme language and tactics there sank as

close to the threshold of the gutter as imaginable and still escape judicial sanctions. How much

lower such conduct could have descended before becoming punishable is difficult to fathom.

Suffice it to say that *Revson* sets the low water mark defining the ethical and professional

behavior on the part an attorney that passes muster immune from discipline." *Mathias v. Jacobs,*

167 F.Supp.2d 606, 624 (S.D.N.Y.2001).   It is clear that whatever the Defendants complain of

here pales in comparison to the facts in *Revson* and while the comparison is heartening and

flattering, it is inapposite. *See Torah Soft Ltd. v. Drosnin,* 224 F. Supp. 2d 704, 722 (S.D.N.Y.

2002) ("The conduct of attorneys here, even if it could be faulted in any respect, would still be

far from the threshold that *Revson* establishes for imposing sanctions."). Again nothing in the Defendants' litany approximates the conduct in *Revson* making sanctions inappropriate.

III.    DEFENDANTS SEEK RELIEF IN ORDER TO IMPROPERLY CHILL
        PLAINTIFF'S COUNSEL IN FILING OTHER LEGITIMATE CLAIMS.

In a seemingly generous spirit, the Defendants announce that they are not "interested in hounding the Plaintiff for years to try to squeeze whatever limited resources he may have." At first blush, this pragmatic turn appears to comprehend the inherently unequal positions and unequitable nature of the relief sought. On closer inspection, however, the Defendant's true motivation and purpose is revealed. The motion before the Court does not seek to chill this Plaintiff or those similarly situated, it is rather intended to chill Plaintiff's counsel. Worse still, the intended effect has little to do with not bringing claims that are arguably fair use, but to chill all lawsuits initiated by the Plaintiff's counsel.

This is not a far-fetched notion but is supported by easily accessible facts. While the Plaintiff's counsel acknowledges that the case at bar was found to be fair use, this is hardly the only copyright case counsel has against these Defendants. Known as recidivist infringers among professional photographers and photojournalists, the Defendants are named in several legitimate and merit-based pending lawsuits. Plaintiff's counsel, who represents these professionals, has been diligently enforcing their copyrights and bringing meritorious claims. At this time, Plaintiff's counsel has at least one other copyright infringement case pending against NBC (on behalf of a professional photojournalist) and it that has nothing to do with fair use. Same is true of ABC in another case on behalf of a professional photojournalist that has nothing to do with fair use. While CMG does not have pending cases, counsel has previously filed against and settled with CMG as well as the other Defendants. To the extent that Plaintiff's counsel should be chilled in the area of fair use, this Court's ruling sufficiently accomplished that end. A mere

two days after this Court's ruling, the Plaintiff's counsel voluntarily dismissed a pending case involving different defendants on the grounds of the now clarified standard for 12(b)(6) motions involving fair use.   Sanctions are not the most effective way to discourage such filings, especially since there are equally important competing interests of excessive chilling at play.

Even more troubling is the fact that outside counsel representing CMG and ABC/Yahoo! represent many repeat infringers against whom Plaintiff's counsel has legitimate, meritorious claims.   Throughout the proceedings Plaintiff's counsel was constantly threatened with a formation of an offensive front between all the Defendants in these related cases, a union between big media outlets and publishers that would annihilate its adversaries.   This motion is culmination of that threat.   Enacting these sanctions would not be a theoretical exercise in chilling legitimate copyright claims, it would be a guarantee.   Defense counsel are well aware that a fledgling, small law firm would find sanctions of this magnitude prohibitive and that is exactly their motivation in asking for attorneys' fees.   Granting these fees would not only give pause to cases where the use is fair, but would excessively chill all cases.   That result cannot sustain the objectives of the Copyright Act.

CONCLUSION

In light of the foregoing reasons, we respectfully ask the Court to deny the Defendants'

motion for attorneys' fees and costs.

Respectfully Submitted,
/s/ Yekaterina Tsyvkin
Yekaterina Tsyvkin
Richard P. Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
RL@LiebowitzLawFirm.com
*Attorneys for Plaintiff Kali Kanongataa*
