UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
KALI KANONGATAA,  : ECF Case
               Plaintiff, :
                                              : Case No. 1:16-cv-07382 (LAK)
      -against- :

AMERICAN BROADCASTING COMPANIES, :
INC. AND YAHOO! INC., :

             Defendants. :
------------------------------------- x
------------------------------------- x
KALI KANONGATAA, : ECF Case
               Plaintiff, :
: Case No. 1:16-cv-07383 (LAK)
      -against- :

NBCUNIVERSAL MEDIA, LLC, :

             Defendant. :
------------------------------------- x
------------------------------------- x
KALI KANONGATAA, : ECF Case
               Plaintiff, :
: Case No. 1:16-cv-07472 (LAK)
      -against- :

COED MEDIA GROUP, LLC, :

             Defendant. :
------------------------------------- x

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTIONS FOR ENTRY OF FEES AND SANCTIONS**

Defendants American Broadcasting Companies, Inc., Yahoo! Inc. (together, "ABC/Yahoo"), NBCUniversal Media, LLC ("NBC"), and COED Media Group, LLC ("CMG") (collectively, "Defendants") respectfully submit this Reply Memorandum of Law in further support of their respective Motions for Attorneys' Fees and Sanctions.

## Introduction

Plaintiff's Opposition (the "Opposition" or "Opp.") contains five key elements that make clear why an award of attorney's fees is appropriate in this case:

1.     Plaintiff maintains that any infringement suit which merely pleads that the plaintiff owns copyrighted material and the defendant used any portion of it states a "colorable" claim that precludes any liability for attorneys' fees. That proposition essentially seeks license to file all manner of meritless copyright infringement lawsuits and to ignore the law of fair use.

2.    Notwithstanding the Court's ruling to the effect that this case presented an obvious example of fair use, Plaintiff erroneously maintains that the merits were "murky" and that the Court's ruling is contradicted by other authority;

3.     Plaintiff's counsel implicitly concede that they intentionally misled the Court about Plaintiff's reasons for streaming the birth video worldwide on Facebook. But they now claim (a) that does not matter because those statements were "irrelevant" falsehoods and the Defendants are to blame for exposing them; (b) alternatively, that it does not matter because the case was dismissed early and so the falsehoods did not accomplish their intended purpose; and/or (c) they were only little falsehoods, which counsel attempts to rationalize by doubling down on yet another false, unsworn version of a story that is equally belied by their client's numerous public statements to the contrary.

1

4.       He offers no facts to refute the examples, which were detailed in Defendants' opening memorandum and declarations, showing how Plaintiff and his counsel multiplied these proceedings with bad-faith filings and conduct that wasted the Court's and the Defendants' time. *See* Defs' Joint Mem. of Law Supp. Entry of Fees and Sanctions ("Defs. Mem.") at 3-5.

5.       Finally, Plaintiff's Opposition makes even more false, unsworn allegations that Defendants threatened the "formation" of some sort of conspiracy to crush him or his counsel in this case, and they are executing that strategy by filing this motion.

Collectively, these elements demonstrate that while at times Plaintiff's Opposition seeks to imply that he and his counsel have learned from their experiences in this case, the reality is quite the opposite. Thus, the goals of compensation and deterrence supporting awards of attorneys' fees under both 17 U.S.C. § 505 and 28 U.S.C. § 1927 clearly will be served by granting Defendants' motions.

## Argument

### I.   SECTION 505 SUPPORTS AN AWARD OF FEES

Plaintiff's Opposition does not dispute that objective unreasonableness is the most important factor in assessing fees under the fee-shifting provisions of the Copyright Act. The Supreme Court's recent decision in *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) reiterated that point. *See id.* at 1983; *see also id.* at 1989 (stating that even a finding that a non-prevailing litigant's position was *reasonable* does not create a presumption *against* awarding fees when other relevant factors justify a fee award). None of Plaintiff's arguments come close to demonstrating that his position on the merits was objectively reasonable.

First, Plaintiff's claim that this was a "close case" that was intended to elucidate a "murky area of law" (Opp. at 15) is far-fetched. This case decidedly did not involve a "murky"

aspect of fair use, and plaintiffs will not be "chilled" in enforcing their rights (Opp. at 19). To the contrary, news organizations – including ones like CMG, which are hardly corporate behemoths – will be chilled from engaging in the very types of reporting and social commentary that the Copyright Act supports if future plaintiffs may file similar lawsuits with impunity.

The cases Plaintiff cites merely reinforce that conclusion. For example, *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108-109 (2d Cir. 1998) involved the retransmission of potentially the entire content of "unique and creative" radio broadcasts in a manner that left "the character of the original broadcasts unchanged. There [was] neither new expression, new meaning nor new message" (internal quotation marks omitted). Similarly, *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1183-84 (9th Cir. 2012) involved the use of entire, unpublished works that had obvious market value since they were photos of celebrities taken by professional photographers, and the use clearly was not transformative because they were simply reproduced for their original intended purpose. And *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 630 (9th Cir. 2003) involved the repeated use of numerous clips of Elvis Presley's performance of individual songs, many of which took the essence of each song and therefore acted as genuine, market substitutes for the original songs and performances. The facts here do not remotely resemble such scenarios.[1]

---

[1] With respect to the DMCA claim, Plaintiff's reliance on *Devocean Jewelry LLC v. Associated Newspapers Ltd.*, 16-CV-2150, 2016 WL 6135662 (S.D.N.Y. Oct. 20, 2016) is misplaced, as was his reliance on *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596 (S.D.N.Y. 2010), upon which the *Devocean* court relied. In his opposition to CMG's motion to dismiss the DMCA claim, Plaintiff claimed that the mere inclusion of an exhibit showing the alleged DMCA violation was sufficient to support conclusory and unsupported statements. (*See* Opp. to MTD at 15-17.) However, as mentioned in the reply brief on Defendants' motions to dismiss in this case, the court in *Banxcorp* (and subsequently the court in *Devocean*) allowed the DMCA claim to survive despite "sparse" factual pleading not because of the mere attachment of exhibits, but rather because the content of the CMI displayed in those exhibits as compared to the CMI allegedly associated with the original works gave rise to the inference that the CMI had been

3

Next, while Plaintiff correctly notes that *Harrell v. Van der Plas*, No. 08 CIV. 8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009) stands for the proposition that defendants should be incentivized to fight *meritless* claims (*see* Opp. at 18-19) – which these lawsuits certainly were – he then attempts to conflate different standards by claiming that defendants in copyright actions should only be incentivized to fight *frivolous* lawsuits. In any event, Plaintiff's definition of frivolity – lacking an "arguable basis either in law or fact" (Opp. at 10) – certainly applies here as well. Plaintiff then goes further and maintains that as long as a copyright owner pleads that he or she owns a work and any portion of it was used by someone else, that is a "colorable" claim. Thus, he argues that such claims may be brought with impunity regardless of how meritless they may actually be, or how much it costs defendants to dispose of them by raising obvious other elements of the Copyright Act, such as fair use.

Plaintiff's view of the law would nullify the mutuality of the Act's fee-shifting provisions, since a defendant could only recover fees from the infrequent plaintiff who fraudulently claims ownership of a copyright. But that is not the law. To the contrary, the Act tries to deter the very strategy Plaintiff implicitly endorses by incentivizing defendants to resist such claims. *See Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 CIV. 7128 (BSJ), 2003 WL 1701904, at *5 (S.D.N.Y. Mar. 31, 2003).

Plaintiff's counsel's unsworn assertion that these Defendants are supposedly repeat infringers and so it is really he who is fighting for the noble cause clearly has no relevance here, where no infringement was even arguable. More importantly, it gets the mechanics, dynamics,

---

altered or removed. *See BanxCorp*, 723 F. Supp. 2d at 610. Exhibits A & B to Plaintiff's complaint did not plausibly suggest that CMG altered the Video's CMI, particularly given that Plaintiff did not even allege that the Video contains CMI, and admitted that CMG "did not alter [the Screenshot] in any way." (Pl. Opp. to MTD at 9.)

and policy underlying the Copyright Act backward. As Plaintiff's own definition of a "colorable" claim illustrates, filing a lawsuit for copyright infringement is easy. And unlike the more restrictive definitions of compensatory damages in tort law, the Act incorporates punitive provisions that make the potential value of infringement lawsuits potentially much greater than the value of the subject work or any actual harm caused by alleged infringement (*e.g..*, statutory damages and attorneys' fees). Those provisions of the Act provide significant monetary incentives for would-be plaintiffs to litigate.

Thus, without some counter-balancing mechanism, the Act would incentivize precisely the strategy Plaintiff and his counsel advocate here – *i.e.*, filing lawsuits premised on minimalist allegations of ownership and use, regardless of whether a defense such as fair use plainly defeats the claim, to extract what they deem to be "reasonable" nuisance settlements from corporate defendants that are cheaper than the costs of litigating even preliminary motion practice and discovery. Section 505 is designed to provide a built-in safeguard to balance out such perverse incentives and even the playing field for defendants who make the kinds of transformative uses of copyrighted material that the Act – and the First Amendment to the Constitution – favor. *See Video-Cinema Films*, 2003 WL 1701904, at *5.

Next, there can be little question but that these lawsuits were brought, and maintained, improperly. It is telling that Plaintiff maintains that Defendants' settlement offers were "unreasonable" even after the Court has made clear that these suits lacked objective merit. Indeed, Plaintiff makes the remarkable assertion that Defendants' offers to settle these *meritless* lawsuits must have been "unreasonable" *because Plaintiff did not accept them*. Opp. at 16.

Even more importantly, it is now beyond serious dispute that when these Defendants refused to meet Plaintiff's nuisance price to be rid of these obviously meritless lawsuits, he tried

5

to up the ante by telling the Court a false story that Plaintiff's public broadcast of the birth video was unintentional. Plaintiff certainly did not acknowledge that this story was "irrelevant" to the fair use issue when he asked the Court to believe it. Rather, Plaintiff and his counsel deliberately sought to elicit the sympathy of this Court and to argue that the video was both "unpublished" and not "news" for purposes of the fair use test, by claiming that Plaintiff was the victim of a technological accident. In reality, Plaintiff made a conscious decision not only to continue streaming the video publicly, but to revel in the national media attention that followed. *See* Defs. Mem. at 6-7; Bierbauer Decl. ¶ 4(a-e).

Finally, even though that false story was at the heart of his written and oral arguments, Plaintiff's counsel tries to shift the blame to Defendants by claiming that *we* are raising supposedly "irrelevant" issues now. The troubling nature of that argument speaks for itself. An award of fees under Section 505 is clearly warranted.

## II. THE CONDUCT OF THIS LITIGATION BY PLAINTIFF AND HIS COUNSEL MERITS AN AWARD OF FEES UNDER 28 U.S.C. § 1927

Plaintiff's counsel's argument focuses heavily on his claim that *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000) is the supposed "gold standard" for Section 1927 motions, and that his conduct here does not rise to that level. But *Revson* is inapposite for two reasons. First, Plaintiff's Opposition recites the district court's description of the conduct at issue, not the Second Circuit's. *See id.* at 77-78. The Second Circuit found the conduct in *Revson* to be less serious than the district court's findings suggested. *See id.* at 79-82.

Second, the alleged misconduct in *Revson* amounted to allegedly "offensive and overly aggressive" communications and tactics directed toward opposing counsel, not the Court, and was in the service of claims and defenses that the district court concluded "were not entirely without color," and which in fact survived until trial. *See id.* at 77. Here, the Defendants' counsel

6

do not contend that Plaintiff's counsel should be sanctioned merely because he mistreated them personally. Rather, sanctions should be awarded primarily because counsel's litigation strategy centered on efforts to mislead *the Court* to advance clearly meritless claims, and to burden both the Court and Defendants with bad-faith, time-wasting filings in the short time that Plaintiff's claims survived. That conduct is more serious that the tactics alleged in *Revson.* The proposition that making false representations to courts is sanctionable is well-settled. *See, e.g., Prospect Capital Corp. v. Enmon*, No. 08 CIV. 3721 (LBS), 2010 WL 907956, at *5, 8 (S.D.N.Y. Mar. 9, 2010) (finding that misrepresentations by omission were clear evidence of bad faith; awarding sanctions under § 1927 and court's inherent powers); *In re Spectee Grp., Inc.*, 185 B.R. 146, 157 (Bankr. S.D.N.Y. 1995) (finding that false representations about existence of financing for a restructuring plan, made as part of scheme to prevent a secured creditor from enforcing its rights, constituted bad faith and warranted § 1927 sanctions).

  In fact, the conduct in this case is even more serious than the conduct sanctioned in *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992), where the Second Circuit affirmed that an award of fees under Section 1927 and the court's inherent authority was justified by the plaintiffs' "vexatious and oppressive tactics." Unlike this case, *Sassower* did not involve lawyers making claims in briefs or oral arguments that were clearly false.

  On the key question of misleading the Court, counsel's Opposition actually doubles down on the practice of making unsworn representations that contradict evidence that was clearly available to Plaintiff's counsel. Counsel now advances yet another, unsworn claim that Plaintiff was somehow duped into streaming the birth video publicly because his "cousin" made some comment that he misunderstood. Opp. at 2. That assertion has never before appeared in either Plaintiff's numerous media interviews or his counsel's previous versions of the facts. It is also

7


impossible to square with Plaintiff's public statements that he quickly recognized the video was being viewed by vastly more people than his "friends and family," but chose to continue anyway.

Moreover, Plaintiff's counsel misrepresents Defendants' conduct in litigating this case. He falsely claims that Defendants threatened an "offensive front" or "union" against him. Plaintiff again offers no proof for this false assertion, and indeed, the record is clearly to the contrary. For efficiency, Defendants suggested that the six cases Plaintiff filed should be transferred to one judge, *see* Bierbauer Decl. ¶ 5, but Plaintiff's counsel objected, apparently preferring to maximize litigation costs for all parties and this Court by pursuing six different cases before multiple federal judges. *See Kanongataa v. NBCUniversal Media, LLC*, 16-cv-07383-LAK, Dkt. #15, Pl. Mem. Supp. Request for Default, at 5 (opposing transfer of cases to one judge); Dkt. #21, Pl. Ltr. Br. Opposing Def. Motion to Consolidate Cases (same). A normal effort to streamline litigation is hardly an "offensive front," nor is an effort by Plaintiff to maximize everyone's litigation costs – including his own – consistent with a cost-conscious, "fledgling" law practice.

Counsel also argues that he has brought other copyright infringement claims against some of these Defendants, which he contends have merit. This motion is obviously not the proper vehicle for litigating the merits of all other lawsuits counsel has filed. Rather, the very fact that the Opposition makes this argument is telling, and it further demonstrates why sanctions are appropriate here. The logic seems to be that as long as a lawyer purportedly brings some potentially meritorious actions, he or she should be free to file other meritless lawsuits and to pursue them in bad faith. Not so. The conduct at issue is that of Plaintiff and his counsel *in this case*, which as explained herein and in Defendants' opening memorandum, is worthy of an award of fees and sanctions.

Finally, particularly in the context of this litigation, Plaintiff's argument that sanctions are not warranted because these cases had a relatively short shelf life also lacks merit. Dismissal of a plaintiff's complaint on a Rule 12 motion does not shield his or her attorney from Section 1927 sanctions. *See Neroni v. Becker*, No. 3:12-cv-1226 (GLS/DEP), 2013 WL 5126004, at *2 (N.D.N.Y. Sept. 12, 2013) (granting fees under § 1927 and the court's inherent power where "this action, and the arguments adduced in opposition to defendants' motion to dismiss, were baseless, without foundation, and vexatious") (internal punctuation omitted), *aff'd* 609 F. App'x 690 (2d Cir. 2015). If credited, Plaintiff's argument would incentivize lawyers to bring multiple, meritless lawsuits in the hope that enough defendants will prefer to pay nuisance settlements, *see* Opp. at 16, rather than incur the not-insignificant cost of bringing a successful motion to dismiss and engaging in preliminary discovery.

## CONCLUSION

For the foregoing reasons, and for those stated in their opening memorandum, Defendants ABC/Yahoo, NBC and CMG respectfully request that their motions for fees and sanctions be granted.

Dated: April 7, 2017  
New York, New York

Respectfully submitted,

By:  /s/ Nathan E. Siegel

Nathan E. Siegel  
Dana R. Green  
LEVINE SULLIVAN KOCH & SCHULZ, LLP  
1899 L Street NW, Suite 200  
Washington, DC 20036  
Tel: (202) 508-1100  
Fax: (202) 861-9888  
nsiegel@lskslaw.com  
dgreen@lskslaw.com

9

*Attorneys for Defendants American Broadcasting Companies, Inc. and Yahoo! Inc.*

By: /s/ Erik Bierbauer

Erik Bierbauer
NBCUNIVERSAL MEDIA, LLC
30 Rockefeller Plaza, 620-541
New York, NY 10112
Tel: 212-664-4167
Erik.Bierbauer@nbcuni.com
*Attorney for Defendant NBCUniversal Media, LLC*

By: /s/ Scott J. Sholder

Nancy E. Wolff
Scott J. Sholder
COWAN DEBAETS ABRAHAMS
& SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
nwolff@cdas.com
ssholder@cdas.com
*Attorneys for Defendant Coed Media Group, LLC*